Mr. Justice James
delivered the opinion óf the Court:
This is an action for injuries alleged to have been suffered by the plaintiff by means of the negligence of the defendant. The declaration states, in substance, that the defendant had, and held itself unto the public as having, an arrangement with the Chesapeake & Ohio Railroad for running continuous passenger trains over the defendant’s line as far as Charlottesville in Virginia, and thence over the line of the Chesapeake & Ohio Railroad to Alleghany station in Virginia; that, under this arrangement, the agent of the defendant sold to the plaintiff a ticket for passage to the Sweet Chalybeate Spring, by way of Alleghany station and return to Washington; that the plaintiff presented that ticket to the proper agent of defendant at *68 defendant’s station in Washington, and asked to be directed to the car which he should take for transportation to Alleghany station, and was thereupon directed to a certain car, which the plaintiff thereupon entered; that the defendant conducted itself so carelessly in the premises that at the town of Charlottesville, and in the night season, and without giving the plaintiff any notice, it took and carried him off from the line over which he was entitled to be carried toward Alleghany, his destination, and carried him upon a different route; that, shortly after such divergence, the plaintiff called the attention •of the conductor of the train to the fact, and thereupon the conductor, in violation of the duty of the defendant, omitted to back the train to the point of divergence at Charlottesville, so as to enable him to alight there and enter a car going to Alleghany, but stopped the train at a point about a quarter of mile distant from Charlottesville, where there was no place for discharging passengers, and whence there was no way which the plaintiff could take for his return to Charlottesville, except the track over which he had passed; that the defendant, by its conductor, directed the plaintiff to alight at said place of stopping, and to follow the said track back to Charlottesville, and wrongfully and negligently assured the plaintiff that the said track was clear of all obstructions and danger and was safe for him to take as a foot passenger; that the plaintiff, being ignorant of the condition of said track, and relying upon the truthfulness of the conductor’s statements, did take and attempt to pursue said track, and whilst so doing, and being a stranger and not aware of a certain dangerous pit in the track, and unable to see the same by reason of the darkness of the night, fell into said pit, and thereby sustained severe and dangerous wounds, injuring his left leg and knee.
At the trial it appeared that what was described in the declaration as a ticket to Alleghany station and return was not one ticket, with coupons for the passage between Charlottesville and Washington, but consisted of two tickets, one of them being for passage from Washington to Charlottesville and return, which was printed black; the other a ticket for *69 passage from Charlottesville to Sweet Chalybeate Springs and return to Charlottesville, which was printed red. The following is a copy of part of the ticket to Charlottesville and return : “ Chesapeake and Ohio Railway, good for one continuous first-class passage. Washington to Charlottesville, Va., and return. In selling this ticket for passage over other roads this company acts only as agent, and assumes no responsibility beyond its own line. * * * Issued by Chesapeake and Ohio Railway on account Virginia Midland Railway, one first-class passage Charlottesville to Washington.”
This was sfamped on the back as follows: “ General Ticket Office Chesapeake and Ohio Rwy.”
The plaintiff bought, at the general office of the Chesapeake and Ohio Railway, a ticket to Charlottesville and return, and with it a ticket from Charlottesville to the Springs and return. On the night of July 20, 1886, at 11 o’clock, he took the Virginia Midland train at the station of the Baltimore and Potomac Railroad in Washington. The coupon on the ticket from Washington to Charlottesville, similar in all respects to the coupon from Charlottesville to Washington, which was shown at the trial, was torn off and' accepted by the conductor of the Virginia Midland, and the plaintiff was carried by reason thereof on that train to Charlottesville.
There was evidence tending to show that other similar tickets, purporting to be tickets of the Virginia Midland, had, when presented along with tickets of the Chesapeake and Ohio, been received by the defendant’s conductors for passage to Charlottesville.
Upon this evidence the court gave, at the request of the plaintiff, the following instruction :
“ If the jury believe from the evidence that tickets of like kind with the one which the jury finds from the evidence was sold to the plaintiff at 5 13 Pennsylvania avenue on the 20th of July, 1886, and which was put in evidence for the plaintiff, and, including the envelope in which the ticket was delivered, were at that time honored and allowed to pass passengers over the Virginia Midland line between Washington and *70 Charlottesville, connecting these with the Chesapeake and Ohio trains ; and if from the evidence the jury further believe that said ticket sold to the plaintiff, and others of like kind; were habitually, and before and after the said 20th of July, sold at the said office by the party who sold the tickets to plaintiff, and were honored as aforesaid by the defendant, and that such office was, before and after said date, furnished with railroad tickets and with other appliances and fixtures of a railroad ticket office, then such facts established prima facie that the party who sold the said ticket to the plaintiff was at said date the authorized agent of the said Virginia Midland Railway Company, for the purpose of selling such tickets to the public and to the plaintiff”
The defendant objects that this instruction “ was granted notwithstanding the undisputed testimony that the general ticket office of the Chesapeake and Ohio, and not the Virginia Midland, had the tickets printed, and supplied them to the local office of the Chesapeake and Ohio Railway at 513 Pennsylvania Avenue, and that the tickets were sold by the agent of the Chesapeake and Ohio as a part of a Chesapeake and Ohio through ticket.”
It is to be observed that, so far as the public, and therefore the plaintiff, was concerned, the question of agency turned not upon the actual fact of an arrangement or contract between the two companies, but upon what the defendant, by its holding out, invited the public and the plaintiff to believe ; and that it is not pretended that any of the facts mentioned in the defendant’s objection were made known to either. The instruction dealt with the question of agency only as it affected .the sale of the ticket to the plaintiff, and as it established an agency so far as he was concerned, and it contained a statement of all the facts relevant to that question. The matters mentioned in defendant’s objection were irrelevant. There was no error in this instruction.
It was claimed on the part of the plaintiff that this agency included authority not only to sell tickets, but to make to the buyer certain representations and assurances, and that these *71 were actually made to the plaintiff at the time of his purchase, and that the defendant was bound by them.
There was evidence tending to show that an arrangement ■existed between the two companies by which round trip tickets from Washington to the Virginia Springs were to be sold over the two roads, and that the agent who sold the ticket to the plaintiff stated, at the time of doing so, that the train which left Washington at 11 o’clock at night was a solid train through to Alleghany station on the Chesapeake and Ohio, the station for the' Springs, and that there was no change of cars. On this matter there was a conflict of evidence. The two persons who acted in selling such tickets at the office in question testified that they did not remember any conversation with the plaintiff about solid trains, but were sure that, if they told him anything about trains, they must have told him that the sleeping cars went through without change.
The plaintiff was carried safely to'Charlottesville, where he .remained in the car and was carried, on the line of the Richmond and Danville road, about a quarter of a mile beyond •Charlottesville. At that point the train was stopped and the plaintiff was invited or directed to alight, and was instructed by the conductor about the path to follow in returning to the station at Charlottesville. It was in walking along the “track” that he fell into a pit and was injured.
There was a conflict of testimony as to how it happened that he was carried beyond Charlottesville and away from the destination indicated by his tickets. The plaintiff testified that he was awake during the whole journey from Washington to Charlottesville, and that “ no notice was given in the •car in which he rode. Mr. Mayse, the conductor, testified that, at a point about a thousand yards from Charlottesville, he entered the ladies’ car from the sleeping car and twice •called out, in a loud voice, “ Charlottesville,” and that, when he called out the second time, he added- the words “ Passengers for the Cheasapeake and Ohio road west change cars.” He did not remember having given notice at any time to the plaintiff personally that he should change cars.
*72 It is unnecessary to state the testimony relating to the circumstances of the subsequent injury.
Upon the matters above stated the court instructed the jury, substantially, that the ticket agent was authorized to-make representations about the running connections of the two lines, “ solid trains” and changes of cars;” that if the plaintiff was thus assured that he could, by taking the train which he did take, reach his destination on the Chesapeake- and Ohio road without change of cars, and no notice of such change was given before he reached Charlottesville, then the defendant, in carrying him beyond the place and out of his course, was a wrongdoer, and was responsible for the consequences. On the subject of notice the court gave the following instruction:
“ 7. If the plaintiff, when he purchased his ticket, was informed by the parties who sold it to him that the train was a solid train, he had a right to rely upon that as a fact, and he cannot be held to have been guilty of negligence in not alighting from the train at Charlottesville unless he was notified that, the change should be made; and if the jury believe that the agent who sold him the ticket did state to him that it was a. solid train, then the burthen of proving that notice to change cars was given to him is on the defendant. It is not sufficient, for the defendant to prove that an announcement was made to change cars at one end of the car while he was sitting at the other end, but the proof must be such as to show that he actually heard the announcement, or that it was made in such a way, under such circumstances, that it can be reasonably said, that he should have heard it.”
It is unnecessary to repeát at length the other instructions given at the request of the plaintiff We have stated their substantial effect, and it is sufficient to say here that we perceive no error in that part of the court’s instructions.
But after the most careful consideration we are unable to agree with the instruction afterwards given, in modification of' the defendant’s request, on the same subject of notice to change cars. The jury had been instructed that notice must be given *73 to the plaintiff, and that a general notice to the passengers in that car must be shown to have been given in such a way that the jury should be satisfied that it must have been heard by the defendant. They had not, however, been told explicitly what effect a general notice so given would have. The request of the defendant on that subject was modified, and was. then given as follows :
“ Ninth. If the jury finds from the evidence that when the train arrived at Charlottesville notice of the fact was given to-the passengers by the conductor or other agent of the Virginia Midland * * * in the usual manner and in accordance with the rules and regulations of the Virginia Midland Company, and an opportunity to safely alight was given to-the plaintiff, and thus to change cars in order to make his-proper connection to the destination fixed by his contract of passage, and if such notice was given in such manner as to-be likely to inform a man of ordinary intelligence, using reasonable care and attention, and the plaintiff was in the car when such notice was given, then the defendants, the Richmond and Danville and the Virginia Midland, did all that the law required of them toward him as a passenger; and if, after such notice, he remained upon such train and was carried from his intended route on a divergent line, it was owing to his-negligence, and neither of said companies is responsible therefor or the consequences thereof, in the absence of gross, willful and intentional negligence, which directly caused the injury he received; unless the jury shall also find that the agent at Washington had informed him that the 11 o’clock train would go through to Alleghany station without any change at Charlottesville, and that the plaintiff believed such to be the fact until he had left Charlottesville, and had not been otherwise informed until he had left Charlottesville.”
Afterwards, in the charge to the jury, the court said: "Do you believe that Dye was satisfied that he was not to change cars at Charlottesville, and that he had been so told by competent authority? As was stated on behalf of the defendants, the conductor, when he first examines the passenger’s ticket, *74 ordinarily informs him at that time whether he is to change ■cars, and at what place. Mr. Mayse does not recollect having given Dye such direction when he first saw his ticket, but he testifies that he went through the car shortly before reaching Charlottesville, and gave notice then publicly. The company had the right to rely upon that because they were represented there by the conductor, just as the ticket agent represented the company within the scope of his authority when he sold the tickets, and adequate notice, if then given by the conductor, was adequate notice by the company.
“ Now, first, you are to determine whether he did or did not give that notice. There is a conflict of testimony on that point between Dye and himself, and nobody else testifies upon “the subject.
“But if Mr. Dye had a through ticket which he believed at the time, under the assurances of the ticket agent, was to carry him through without any changing of cars, then this announcement, if it had been made, well might have been considered by him as of no consequence to him. If he had been in the Pullman car, which it is admitted was to go through, .and the conductor had gone in there and said what he declared he said in the ladies’ car, Mr. Dye well might have said to himself: ‘ That has nothing to do with the people in this car, .as we go through without change.’ And so, if the announcement had been made in the car in which Mr. Dye actually was seated, he might have thought it did not concern him, if he believed he was to go through without chánge in the ladies’ car. He would have supposed he would reach his ■destination precisely as if he were in the Pullman car. There would have been no difference except that in the Pullman car he would have had to pay extra for a bed or a seat.
“ Still, you may consider whether, if that notice had been given, it would not have been incumbent upon him to prick up his ears and take heed of the announcement, notwithstanding the mistaken statement in the ticket office, and whether, from abundant caution, notwithstanding his belief, lie should not have gotten up and made inquiry.”
*75 It seems to be implied in several of the instructions given at the request of the plaintiff, though not categorically stated, that notice to him of a change of cars at Charlottesville would put an end to his right to act upon the previous assurance of the ticket agent. It would seem to have been the object of the defendant’s ninth request to obtain an instruction that a general announcement to the passengeis of such a change of cars would, if heard by the plaintiff, have the same effect. Neither that request, however, nor the modification given by the court, states distinctly an hypothesis that such an announcement was actually made and was heard by the plaintiff. But that fact was assumed, as an hypothesis, in the charge. It was submitted to the jury when the court expressed an opinion that, if the plaintiff had received from the ticket agent the alleged assurance, this announcement might well have been considered’ by him “ as of no consequence to him;” and it was clearly submitted to them when they were told that they might consider whether the announcement in question made it incumbent on him to take heed, or to inquire into the fact of a change, notwithstanding the assurance of the ticket agent that there would be no change of cars.
This instruction takes color from the observation of the court with which it was connected. In this way it was to the effect that the jury were to determine whether the plaintiffj having an agreement, or at least what he believed to be better information to the contrary, might, without inquiry, disregard a public notice that passengers going west on the Chesapeake and Ohio road must change cars; and this, notwithstanding the notice, described his own destination. The implication was that, if the jury should find that the plaintiff omitted to inquire, and disregarded the notice, in the belief that the ticket agent’s contrary statement was correct, then the jury would be authorized also to find that he did not remain in that car improperly, and that the defendant was a wrongdoer in carrying him beyond Charlottesville.
This instruction did not submit the question whether the alleged notice was sufficiently intelligible to put the plaintiff *76 on inquiry. It authorized the jury to assume that the plaintiff had a right to adhere, without inquiry, to his reliance on the statement of the ticket agent; in other words, to decide, without inquiry, which of the two conflicting statements he should rely on.
We think the belief on which a passenger acts concerning matters of fact, such as stopping at certain stations or changing cars, does not affect the liability of the carrier, unless the existence or continuance of that belief is caused by the latter; and that a belief which the passenger elects to hold when an intelligible corrective statement is made by an authorized agent of the carrier, cannot, as a matter of law, be regarded as a belief caused by the carrier. The choice of a belief, when correct information is furnished in good season and in a proper manner by the carrier, is the act of the passenger himself. Of course, when the passenger’s original belief has been caused by information on which he had a right to rely, he is not supposed to make an election, unless the corrective information comes from a source on which he has a right to rely.
The right of a passenger to act upon information received from a ticket agent, in disregard of other reasonable means of information, was considered by the Supreme Court of Michigan when one of the present members of the Commissioners, of Interstate Commerce was a member of that court. The court said, in Lake Shore, &c., Rwy. vs. Pierce, 47 Mich., 277: “A passenger may rely upon information derived from the servants of the company occupying a position which apparently clothes them with authority and knowledge in reference to a particular matter. Thus railway passengers have a right to rely, until differently informed, upon information given by a ticket agent, in answer to an inquiry relative to the stoppage of a certain train at a particular station, and if a passenger does not disregard reasonable means of information, and, relying upon the information so received, gets upon the train in question, which does not stop at the station to which he is destined, the company is liable for the damages arising from its failure to take him to his destination as agreed through its *77 ticket agent.” This statement is cited as authority by Wood on Railway Law, vol. 2, 1126. This case supports the proposition that a passenger cannot claim that he acted upon a belief caused by the carrier when he has himself elected what to believe as between the information derived from the ticket agent and different information derived from another source authorized by the carrier.
It may be added that the courts take judicial notice of the functions of such railway officers as ticket agents and conductors as matters of common experience, and that passengers are supposed, on the same ground, to know these functions and the regulations of the companies to which they trust themselves. Schouler on Bailments and Carriers, sec. 635, and cases cited; Murdock vs. Railway, 137 Mass., 293; Page vs. N. Y. Central R. R., 6 Duer., 523, 529; Southern R. R. vs. Kendrick and wife, 40 Miss., 576, 585. It is known to be the special function of conductors of railway trains to be informed, and to inform others, what they are going to do with the trains they conduct. While the authorities hold that “ a traveler may rely with more confidence upon a ticket agent’s assurance concerning fares and tickets, and the contract obligations they import, than that of any conductor,” it is equally known to the courts that a conductor’s announcement concerning what he is about to do with his own train is more to be relied upon than the statement of a ticket agent concerning the same matter. If the functions and relative authority of ticket agents are thus recognized by the courts as matter of law, it would seem to follow that a passenger cannot disregard, and without inquiry, the statement of the couductor concerning the running of his train.
It will be observed that we assume the facts in this case only as an hypothesis, and that we do not mean to imply that there was actually an announcement of a change of cars, or that the plaintiff heard such announcement.
Counsel for the plaintiff urged in their printed argument that “ the jury must have found that plaintiff was not notified of the necessity of changing cars at Charlottesville before the *78 jury would be entitled to give any weight to the declarations of the ticket agent regarding the trains running through without change, and that the plaintiff did not receive such notice.”
If we are right in our view of the effect of the instruction which we have discussed, the jury might have found under it the same verdict, notwithstanding they believed that the alleged notice of a change of cars was actually given, and was heard by the plaintiff; on the ground that he had a right to decide, and did in good faith believe, that he might still rely on the ticket agent's assurance, without any inquiry about the notice; and on the ground that, in that case, he was carried beyond Charlottesville involuntarily and wholly by means of the defendant’s negligence. 0
We conceive that the question involved is of such importance that we have no right to consider whether, on the whole,, justice would seem to have been done by the verdict. For these reasons,

The judgment is reversed and a new trial is granted.