UNITED STATES v. BROWN & EADIE.

(Circuit Court of Appeals, Second Circuit. March 2, 1905.)

No. 117.

1. CUSTOMS DUTIES—CLASSIFICATION—CRAVENETTE CLOTH—WOOLEN CLOTH.
Certain woolen goods known as "cravenette cloths," which have been subjected to a process intended to make them rain-repellent, which are chiefly used for outer garments to be worn in rainy weather, and which, for all ordinary purposes, are waterproof, are dutiable as "waterproof cloth," under paragraph 369, Tariff Act Oct. 1, 1890, c. 1244, § 1, Schedule J, 26 Stat. 593, and not under paragraphs 392 and 395, Schedule K, of said act, 26 Stat. 596–97, relating, respectively, to "woolen or worsted cloths" and "dress goods * * * of wool, worsted," etc.

2. SAME—SCHEDULE TITLES—EJUSDEM GENERIS.
The titles of the various schedules in tariff acts are not intended to be perfectly accurate, but furnish general information only of the articles enumerated in the paragraphs therein; and the principle of ejusdem generis should not be applied to exclude waterproof woolen cloth from the provision for "waterproof cloth" in paragraph 369, Tariff Act Oct. 1, 1890, c. 1244, § 1, Schedule J, 26 Stat. 593, because the subject of that schedule is flax, hemp, and jute.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 126 Fed. 446.

This is an appeal from a decision of the Circuit Court for the Southern District of New York reversing a decision of the Board of General Appraisers which had sustained the action of the collector in assessing certain woolen or worsted cloths, imported in the spring of 1893, and known as "cravenette cloths," under paragraph 392 of the tariff act of October 1, 1890, c. 1244, § 1, Schedule K, 26 Stat. 596, as "woolen or worsted cloths not specially provided for." The paragraph is as follows:

"392. On woolen or worsted cloths, shawls, knit fabrics, and all fabrics made on knitting machines or frames, and all manufactures of every description made wholly or in part of wool, worsted, the hair of the camel, goat, alpaca, or other animals, not specially provided for in this act, valued at not more than thirty cents per pound, the duty per pound shall be three times the duty imposed by this act on a pound of unwashed wool of the first class, and in addition thereto forty per centum ad valorem; valued at more than thirty and not more than forty cents per pound, the duty per pound shall be three and one-half times the duty imposed by this act on a pound of unwashed wool of the first class, and in addition thereto forty per centum ad valorem; valued at above forty cents per pound, the duty per pound shall be four times the duty imposed by this act on a pound of unwashed wool of the first class, and in addition thereto, fifty per centum ad valorem."

The importers protested, insisting that the merchandise should have been classified as "waterproof cloth," under paragraph 369, c. 1244, § 1, Schedule J, 26 Stat. 593, which is as follows:

"369. Oil-cloth for floors, stamped, painted, or printed, including linoleum, corticene, cork-carpets, figured or plain, and all other oil-cloth (except silk

oil-cloth), and water-proof cloth, not specially provided for in this act, valued at twenty-five cents or less per square yard, forty per centum ad valorem; valued above twenty-five cents per square yard, fifteen cents per square yard and thirty per centum ad valorem."

The appellant also advances the contention that if the goods in question were not properly assessed by the collector, under paragraph 392, they should have been classified as "dress goods," under paragraph 395 (chapter 1244, § 1, Schedule K, 26 Stat. 597) of the act, which is as follows:

"395. On women's and children's dress goods, coat linings, Italian cloth, bunting, and goods of similar description or character composed wholly or in part of wool, worsted, the hair of the camel, goat, alpaca or other animals, and not specially provided for in this act, the duty shall be twelve cents per square yard, and in addition thereto fifty per centum ad valorem: Provided, That on all such goods weighing over four ounces per square yard the duty per pound shall be four times the duty imposed by this act on a pound of unwashed wool of the first class, and in addition thereto fifty per centum ad valorem."

The decision of the Circuit Court is reported in 126 Fed. 446.

D. Frank Lloyd, Asst. U. S. Atty.

Albert Comstock, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The question to be determined is whether or not the imported merchandise was "waterproof cloth," under the provisions of paragraph 369 of the tariff act of October 1, 1890, c. 1244, § 1, Schedule J, 26 Stat. 593. If so, the decision of the Circuit Court was right; if not, the decision of the board was right.

The merchandise consists of woolen or worsted cloth, known as "cravenette cloth," which has been subjected to a process intended to make it rain-repellent. The cloth after being proofed draws and retains dust to such an extent as to render it unfit for dress goods. It was generally imported in pieces 60 inches in width, whereas the average width of dress goods is 45 inches. A dress could, of course, be made of cravenette as one could be made of oil skin, assuming that a woman were found eccentric enough to desire such apparel. The evidence is, however, overwhelming that this cloth was rarely sold or used as dress goods and that the predominant use was for the outer garments of men and women, intended to be worn in rainy weather. A few hundred pieces were at one time made in 46-inch width and an unsuccessful effort was made to sell them as dress goods, but only 100 pieces were sold in three years and the remainder were sold at a sacrifice. There can be no doubt that 60 inches was the standard width. One of the witnesses says: "If a woman makes her dress out of it and it sweeps through the dust, and the dust settles in the skirts, she could never get it out again." This is due to the paraffine used in the process of proofing. Cravenette is not absolutely waterproof; in this respect it resembles gossamer rubber cloth and other materials universally recognized as waterproof. Few so-called waterproof cloths are absolutely impervious to water. Practically and relatively cravenette is waterproof. It would offer slight protection to a sailor constantly dashed with spray on the deck of a storm-tossed vessel,

but it would be a fair substitute for an umbrella and would keep the wearer dry in an ordinary shower of rain. Many so-called fireproof buildings disappeared in the conflagration which recently swept over Baltimore and it is probably true that cravenette cloth would furnish inadequate protection in an unusually severe downpour of rain. Nevertheless for all ordinary uses it is waterproof and that term is properly used in describing it. A practical and, we think, common-sense trade definition of waterproof cloth is found in the record. One of the witnesses says:

"From my standpoint as a manufacturer of waterproof garments, any cloth of which I can make a garment that will keep the wearer dry in a rainstorm is waterproof cloth."

· This testimony is inadvertently attributed to the wrong witness in appellant's brief, and is criticised mainly for reasons growing out of this mistake. The definition may be too broad, but it is valuable as the opinion of a practical business man who has had 13 years' experience as manufacturer, importer and trader in making and selling waterproof garments. That cravenette will answer the requirements of this definition is not disputed. The testimony taken in the Circuit Court is to the effect that in texture and appearance it has all the characteristics of the waterproof cloths of commerce, its primary use being for mackintoshes and other waterproof garments, and that it is in fact one of the waterproof cloths of commerce. The testimony shows further that the term "waterproof cloths" has been used in trade in this country for years to designate a cotton or woolen cloth which by any process has been rendered rain-repellent. · The merchandise in question is woolen cloth, but it is also waterproof cloth and we think the latter is the more specific designation.

The suggestion that the principle of ejusdem generis is applicable is met by the fact that although paragraph 369 is in the flax, hemp and jute schedule the exception as to "silk oil cloth" is a clear indication that Congress regarded the words "oil cloth" as broad enough to cover silk oil cloth, but for the exception. Counsel for appellant interprets the paragraph as if it read "and waterproof cloth made of flax, hemp or jute," or as if it read "and waterproof cloth (except woolen or worsted waterproof cloth)." There is, we think, nothing to warrant such an interpretation. An examination of the law in question and, indeed, of every tariff law which has ever been enacted in this country, will demonstrate the fact that the title of the various schedules is not intended to be perfectly accurate; it furnishes general information only of the articles enumerated in the following paragraphs. There is no reason why woolen cloth may not be waterproofed and thus become waterproof cloth. When this is done it is taken out of the broad class of woolen cloths and placed in the more precise and restricted class of waterproof cloths—a class made more precise by the addition of a new, distinguishing characteristic. The position taken by the appellant in the proceedings below would seem to indicate that it was the government's contention that any cloth—cotton, woolen

or mixed—which is subjected to a process which fills the interstices of the cloth and prevents water from going through is waterproof cloth. Cravenette cloth is treated with wax, and that water will not readily pass through is proved by a conclusive test. One of the witnesses made a bag of the cloth and filled it with water and at the end of 48 hours not only was the water held but the underside of the bag was not even wet. The process invented by Craven is a secret process, but whether the interstices of the cloth are filled with wax, rubber, or other material is not important so long as the main result is accomplished and a waterproof cloth is produced. We are, therefore, of the opinion that the merchandise in question was waterproof cloth and that it was and is so known commercially.

The testimony in the Walker case was taken by the board in 1892, before—as is asserted by counsel for appellees—the rules of procedure there had been definitely established. The importer was not represented by counsel and the witnesses were not cross-examined. This testimony was introduced in the case at bar and we think the most favorable view for the appellant to be deduced therefrom is that it leaves the question in doubt. When, however, it is supplemented and explained by the testimony subsequently taken in the Circuit Court we think the vast preponderance of proof favors the contention of the importers.

The appellees are charged with laches in not appearing and contesting the case before the board and in delaying unduly the proceedings in the Circuit Court. An examination of the record does not disclose any irregularity in these respects which would justify a reversal even if the error were properly assigned.

The decision of the Circuit Court is affirmed.