OZARK GROCER CO. v. CRANDALL.

Opinion delivered December 17, 1917.

1.  CONTRACTS—CONSTRUCTION OF TERMS USED.—In construing the language of contracts, it is to be presumed that the parties intended to apply it to conditions to be reasonably anticipated.

2. CONTRACTS—SUBSTANTIAL PERFORMANCE.—Substantial performance of a contract is sufficient to warrant a recovery.

3. LEASE—AGREEMENT THAT A BASEMENT BE WATER-PROOF.—A contract of lease required the lessor to furnish a basement that was and would remain "water-proof." *Held*, the court was correct, where it charged the jury "that the term 'water-proof' is a relative expression and that it is to be construed by you as meaning that the walls and floor of the basement were to be so constructed as to keep out water and dampness under such circumstances and weather conditions as might have been reasonably foreseen and anticipated, and if the walls and floor of the basement were so constructed (as to resist the ordinary invasion of water and dampness) it was in law 'water-proof.' "

4. LEASE—WATER-PROOF BASEMENT—UNPRECEDENTED FLOOD.—Under the facts as stated in 3, above, *held*, the lessor is not liable for damages resulting from water coming through the basement windows, caused by the unprecedented overflow of the waters from a neighboring creek.

Appeal from Boone Circuit Court; *Jno. I. Worthington,* Judge; modified and affirmed.

*J. Lloyd Shouse* and *J. Sam Rowland,* for appellant.

1. The court erred in giving the fifth instruction for plaintiff. Courts should not invade the province of the jury by charging as to matters of fact. Const. Art. 7, § 23; 49 Ark. 439; 43 *Id.* 289; 45 *Id.* 165, 492; 53 *Id.* 381; 55 *Id.* 108; 58 *Id.* 109; 26 Oh. Ct. Ct. 59.

2. The court erred also in its instruction as to the measure of damages by flood-water.

3. The verdict is excessive. It should not, at least, be more than $1,133.33.

*J. M. Shinn* and *Troy Pace,* for appellee; *B. F. McMahon, O. W. Hudgins* and *Karl Greenhaw,* of counsel.

1. It was not error to give instruction No. 5 for plaintiff. 80 N. Y. 312; 62 *Id.* 264; 88 *Id.* 650; 75 S. W. 330; 74 *Id.* 603; 23 *Id.* 393; 130 N. W. 924.

2. There is no error in the other instructions given nor refused. See 16 R. C. L., § 171-2-9, 184, 465; 24 *Id.,* § § 1130-1; 169 S. W. 229.

3.  The general finding for plaintiff was a finding upon all the issues raised. 1 Ark. 465; 6 *Id.* 178; 15 *Id.* 403; 169 S. W. 229.

4.  There is no merit in appellants' contention for a reduction of $33.33 1-3 per month on rent. The verdict is sustained by the evidence.

McCULLOCH, C. J.  Defendant, Ozark Grocer Company, was engaged in the wholesale grocery business at Fayetteville, Arkansas, with a branch house at Harrison, Arkansas, and on July 15, 1913, entered into a written contract with plaintiff H. A. Crandall for the rental of a storehouse in Harrison to be constructed by plaintiff on a lot which he then owned. The contract contained many provisions having no bearing on the present controversy. The feature of the contract which is the basis of the controversy reads as follows:

"The walls and floor of said basement to be properly water-proof and so maintained during the term of this lease to prevent dampness and water entering or accumulating therein."

Other provisions of the contract were to the effect that the house was to be constructed in workmanlike manner and there were several specifications recited in the contract for the method of constructing the house. Among other things, it was provided that the roof should be "of good material, water-proof, properly laid and maintained to be equipped with proper metal flashing to extend over the roof preventing leak along side walls and shall have sufficient guttering and down spouts to carry all water from the building." There is a conflict in the testimony as to whether or not the following clause appeared in the contract, as claimed by defendant:

"That in the event basement is not kept free of dampness, and water accumulates therein so as to prevent its being continuously used without damage to goods placed therein, then same may be vacated and the rental value of building reduced in proportion as its area bears to the area of floor space of entire building, main floor,

and basement, and its use be held for the party of the first part."

The defendant introduced proof to show that the clause just quoted was attached to the contract on a separate slip referred to as "the yellow slip." Plaintiff denied that this clause became a part of the contract. The house was finished and defendant moved into it in December, 1913, but finally moved out before the expiration of the term of lease, and this is a suit to recover the unpaid rent.

At the time of the trial there was alleged to be due rent of $100 per month for 17 months, and the jury returned a verdict in favor of the plaintiff for $1,200. The defendant's contention was that the roof of the house and the basement were neither constructed in accordance with the specifications of the contract, and that on that account defendant was compelled to move out of the house, it being contended that the basement in particular was not water-proof and was not suitable for the housing of merchandise such as carried in stock by defendant. Defendant filed a counter-claim seeking damages in the sum of $6,348.15 on account of merchandise alleged to have been ruined by water and dampness which came into the building by reason of the alleged defects in construction. The testimony was conflicting upon every issue presented, but it is admitted that in the summer of 1915 there was an overflow from a nearby creek which came up above the lower line of the windows of the basement and that water got into the basement and damaged defendant's goods.

The assignments of error are very numerous, and we will not undertake to discuss them all, but will confine this opinion to a discussion of those assignments which are deemed material.

The first one of importance is that the court erred in giving the fifth instruction at plaintiff's request, which reads as follows:

"I charge you that the term 'water-proof' is a relative expression and that it is to be construed by you as meaning that the walls and floor of the basement were to be so constructed as to keep out water and dampness under such circumstances and weather conditions as might have been reasonably foreseen and anticipated and if the wall and floor of the basement were so constructed (as to resist the ordinary invasion of water and dampness) it was in law 'water-proof.' "

(1-3) We are of the opinion that the instruction was correct, and was in line with the law as declared by this court to be that substantial performance of a contract is sufficient to warrant a recovery. *Fitzgerald* v. *LaPorte,* 64 Ark. 34. The correctness of this view as applied to the contract now under consideration is emphasized by the clause which permits the lessee to withdraw from the basement in the event it is not kept free from dampness and water. This shows that a literal performance of the contract was not intended, but merely that the construction be sufficient to protect the goods of the lessee from injury. It was a question for the jury to determine whether the injury resulted from causes which might have been anticipated so as to have been within the terms of the contract. In construing the language of the contract it is to be presumed that the parties intended to apply it to conditions to be reasonably anticipated.

(4) It is also contended that the court erred in giving an instruction to the effect that plaintiff was not liable for damages which resulted to the goods of defendant by reason of flood-water coming through the basement windows, "provided that you find from a preponderance of the testimony that the flood at that time was an unprecedented one, that the waters of the creek rose higher than they had been known to rise before, and that plaintiff had placed the windows at such height that they stood above high-water mark of preceding floods, and that plaintiff had not been guilty of negligence

in the construction of the windows." We think the instruction was correct, for under the contract plaintiff was not guaranteeing the safety of the goods of defendant, but merely undertook to construct a house according to the specifications set forth in the contract so as to reasonably provide protection for the goods. Any other view of the matter would make the plaintiff the guarantor of the safety of defendant's goods during the occupancy of the house.

It is very earnestly contended that the undisputed evidence shows that the walls of the basement were not water-proof within the meaning of the contract, but we are of the opinion that there was evidence legally sufficient to sustain the verdict. While it appears to us from the testimony that the basement was not constructed so as to be "water-proof" within the meaning of the contract, yet there is testimony from which the jury might have drawn the conclusion that the work was done within the terms of the contract. It is mainly a question of the proper inferences to be drawn from the testimony adduced in the case, and it would be an invasion of the province of the jury for us to say that the evidence was not sufficient to sustain the verdict on that issue.

There was a sharp conflict as to whether the "yellow slip clause" in the contract was incorporated in it, but it seems from the amount of the verdict that the jury found that it was a part of the contract and that a deduction from the rent was allowed to defendant on that account. It is undisputed that the rent was unpaid for seventeen months, but the jury only allowed $1,200, which is approximately the amount that should have been allowed with proper deductions under the "yellow slip clause." The jury failed to allow any damages to defendant for injury to his goods, but the evidence is sufficient to sustain the verdict in that respect. Counsel for appellant demonstrate, however, that the verdict was not accurate in allowing $1,200 for the rent during the period after defendant removed from the house after deducting the

proportionate amount of the rent of the basement. They show that the verdict should have been only for $1,133.33. We think counsel are correct in that respect, and that the verdict should be reduced to that sum.

The judgment will, therefore, be modified so as to reduce the sum recovered to $1,133.33, as of the date of judgment below, and as so modified, the judgment is affirmed.