**LIVINGSTON v. FUHRMAN.**

No. 170.

Municipal Court of Appeals for the
District of Columbia.

June 6, 1944.

Arthur L. Willcher, of Washington, D. C., for appellant.

Mrs. Goldie S. Paregol, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge. The record shows that prior to the transaction in question the appellee wished to buy a diamond ring and was given the name and card of one Lassover. On the card appeared the name of Lassover and a telephone number and address. The number and address were that of Livingston & Company, a retail jewelry store operated by appellant. Appellee called Lassover at Livingston's and made an appointment to see him. Pursuant to the appointment she went to the store of Livingston and was there shown diamond rings by Lassover. Later Lassover brought some rings to her home and she selected and purchased one. Thereafter appellee, desiring to purchase a waterproof wrist watch for her husband who was in the army, called Lassover at Livingston's and arranged an appointment. She went to the store and Lassover showed her some wrist watches. Afterwards Las-

sover brought some watches to her home and she selected and purchased the watch in question for $50. The watch was given by her to her husband who kept it for approximately six months. At the end of that time the watch was rusty and would not operate. Appellee took the watch to Livingston for repair. Livingston sent the watch to the factory but later informed appellee that the watch was in such a condition it could not be repaired. Appellee sued Livingston to recover the purchase price of the watch. She testified she thought Lassover was working for Livingston.

The testimony of appellant was that he conducted a wholesale and retail jewelry business, that Lassover was not his employee but was an independent jeweler, who purchased jewelry at wholesale from him and sold it at retail to his own customers; that appellant permitted Lassover to use the store telephone number for the purpose of receiving customers' calls and in Lassover's absence appellant would take messages for him; and that Lassover was permitted to use the store for the purpose of meeting customers and showing them merchandise. The evidence of appellant further was that Lassover was not his agent, that all merchandise received by Lassover was paid for by Lassover and appellant did not know to whom Lassover sold or for what prices and under what conditions he sold, and that appellant had nothing to do with Lassover's sales or customers.

The trial court found that appellant had "clothed Lassover with at least apparent authority to act as its agent" and that appellee "assumed she was dealing with Livingston & Co. through Lassover, its agent"; and awarded appellee judgment for the full purchase price. Appellant contends the trial court was in error in holding Lassover was the apparent agent of appellant; but we think the evidence justified this holding. The law with respect to apparent authority was well stated in Derryhill v. Ellett, 10 Cir., 64 F.2d 253, 256, as follows:

"Apparent authority may result from a manifestation of consent made to a third person or to third persons and inferred from words or conduct which, although ordinarily not indicating such consent, cause the third person because of facts known to both parties reasonably to believe that such consent exists, either where the apparent principal intended to cause such belief on the part of the third person, or where he ought to have anticipated that such belief would be caused."

When appellee went to appellant's retail jewelry store and was there shown jewelry by a salesman, she could reasonably assume that the salesman was the agent of the store and not acting as an independent jeweler; and appellant was bound to anticipate that the situation permitted by him might reasonably lead to such a conclusion.

Appellant further contends there was no warranty and no evidence of a breach thereof. The Uniform Sales Act[2] provides:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

Appellee asked for a waterproof watch, and was shown watches purporting to answer that description, and when the purchase was made the receipt recited payment for a waterproof watch. We think it is clear that there was a plain affirmation by the seller of the fact that the watch was waterproof, and that this constituted an express warranty.

With respect to a breach of the warranty, the only evidence was that the watch was for approximately six months in the possession of appellee's husband, who was in the army and away from the District of Columbia, and that when he returned the watch was rusty and not operating. It is conceded that it was then beyond repair, but the husband did not testify and there was no evidence as to the conditions under which the watch had been

1 Cf. Dye v. Virginia Midland R. Co., 9 Mackey 63, 70, 20 D.C. 63, 70; Hannon v. Siegel-Cooper Co., 167 N.Y. 244, 60 N.E. 597, 52 L.R.A. 429; Rubbo v. Hughes Provision Co., 67 Ohio App. 123, 36 N.E.2d 144, affirmed in 138 Ohio St. 178, 34 N.E.2d 202.

2 Code 1940, § 28—1112.

used or the treatment it had received. One suing for a breach of warranty has the burden of establishing the warranty and its breach. We think that the mere proof that the watch had rusted and was not operating at the end of six months did not sustain the burden of proof. There was no evidence of the meaning of the word "waterproof" as applied to watches and we cannot assume that waterproof when used to describe a watch warrants the watch to be waterproof regardless of conditions and treatment. The word is used often in a relative and not absolute sense.[3] The term "fireproof" has been construed in the same manner.[4] We hold that without proof of the meaning of waterproof when applied to a watch, and in the absence of proof as to the conditions under which the watch was used and the treatment it received, the appellee failed to sustain the burden of proving a breach of the warranty.[5]

The judgment is reversed with instructions to grant a new trial.

Reversed.

---

[3] Brown & Eadie v. United States, C. C., 126 F. 446, affirmed in 2 Cir., 136 F. 550; Ozark Grocer Co. v. Crandall, 131 Ark. 481, 199 S.W. 551, L.R.A.1918B, 824.

[4] Lane-Moore Lumber Co. v. City of Storm Lake, 151 Iowa 130, 130 N.W. 924; Diebold Safe & Lock Co. v. Huston, 55 Kan. 104, 39 P. 1035, 28 L.R.A. 53.

[5] Cf. Purity Ice Co. v. Hawley Down Draft Furnace Co., 22 App.D.C. 573, 593; Fries, Beall & Sharp Co. v. Livingstone, 56 App.D.C. 209, 211, 12 F.2d 150.