This case arose out of a contract by defendant Keith Henderson, d/b/a Builders Supply Company, Inc. to build a lake house for the plaintiffs, Joseph E. Carter, Jr., and Debbie McClung Carter. Two issues are presented in this appeal: (1) whether the trial court erred in denying the Carters' motions for directed verdict and for JNOV, and (2) whether the trial court erred in denying the Carters' motion for new trial sought on the grounds that the jury verdict was contrary to the great weight and preponderance of the evidence and that a juror had failed to answer truthfully a voir dire question about a relationship between himself and the defendant, Henderson.
In 1980, Joseph and Debbie Carter purchased a parcel of land from Mr. Howell Henderson, the father of the defendant, Keith Henderson. This lot was located on a peninsula jutting out into Lake Logan Martin in St. Clair County, Alabama. The lot was rectangular in shape, with one of the longer sides fronting on a public road, and the other longer side fronting on Lake Logan Martin. In October, 1983, the Carters approached Henderson about building a house for them on the lot. On November 28, 1983, the Carters and Henderson signed a written "construction agreement," apparently drafted by the Carters' attorney. The construction agreement referred to "Exhibit A" and "Exhibit B" and made those exhibits part of the written contract. However, neither Exhibit A nor Exhibit B was attached to the construction agreement admitted into evidence at trial. In fact, exactly what documents constituted Exhibits A and B was hotly contested at trial. The Carters testified that Exhibit A was the deed to the property and that Exhibit B was a "description of materials" provided to the Carters by Henderson. According to the Carters, the "description of materials" called for Henderson to put wooden windows in the house, rather than aluminum windows. Henderson testified that Exhibit A was merely a separate description of the property, and that Exhibit B was the proposed house plans.
In the early months of 1984, Henderson began constructing the Carters' house. It was to be a two-story house, with the upper floor consisting of living area and the lower floor consisting of a basement, with one half of it finished (liveable) and one half unfinished (unexcavated, dirt). In March 1984, the Carters moved into the house. Soon thereafter, they began experiencing numerous problems. Henderson made numerous attempts to satisfy the Carters, and did, at personal expense, remedy several of the Carters' complaints. However, Henderson was unable to remedy the Carters' two major complaints: a water condensation problem on their windows, and a "waterproofing" problem in the unexcavated portion of their basement.
After a year or more of attempts to remedy these two problems, the Carters sued Henderson, alleging a breach of contract. They alleged that the construction agreement had called for wooden windows and that they had actually gotten aluminum windows. This difference in materials, they alleged, had caused the water condensation problem they were experiencing. The Carters also alleged that Henderson had breached their contract by not "waterproofing" the basement. After Henderson answered the complaint, the Carters amended their complaint to seek damages for mental anguish and inconvenience resulting from the alleged breach. The case was submitted to a jury; the jury returned a general verdict in favor of Henderson and against the Carters. The Carters appealed.
 The Directed Verdict and JNOV Issue
The Carters argue that Henderson's contractual obligations were so clear, and his breach of those obligations so obvious, that the trial court erred in refusing to direct a verdict in their favor. The Carters assert that the contract clearly called for wooden windows, rather than aluminum windows, to be installed in their house. Also, they stress that the contract called for the basement *Page 1353 
to be "waterproofed," and they argue that because water from the outside leaked into the basement this was a breach of the contract. We cannot agree with the Carters that resolution of the issues in this case was so simple.
Initially, we note that a motion for directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.;Alabama Power Co. v. Williams, 570 So.2d 589 (Ala. 1990); JohnR. Cowley Bros., Inc. v. Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman S. Guin, Alabama Civil Procedure § 8.37 (1990). Similarly, a motion for JNOV simply "permits the trial court to revisit its earlier ruling denying the motion for directed verdict." Alabama Power Co. v. Williams,570 So.2d 589, 591 (Ala. 1990). The ultimate question, of course, as to either motion, is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Hoffman Guin, supra, at § 8.37. For actions filed after June 11, 1987, the standard of review applicable to motions for directed verdict and JNOV is the "substantial evidence rule." See, § 12-21-12(a), Ala. Code 1975; Koch v. State Farm Fire Cas. Co., 565 So.2d 226, 228
(Ala. 1990). Thus, in an action filed after June 11, 1987, a nonmovant must present "substantial evidence"[1] supporting each element of his cause of action or defense to withstand a movant's motion for a directed verdict or JNOV. This calls for "a purely objective determination of whether the party having the burden of proof has produced [sufficient] evidence [of a factual dispute] requiring resolution by the jury." Ex parteOliver, 532 So.2d 627, 628 (Ala. 1988); and see, John R. Cowley Bros., Inc. v. Brown, 569 So.2d 375 (Ala. 1990).
Additionally, in reviewing motions for directed verdict and motions for JNOV, this Court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would be free to draw. Williams v. Allstate Ins. Co., 591 So.2d 38 (Ala. 1991).
In the case at bar, we conclude, after a thorough review of the record, that Henderson presented more than sufficient evidence of factual disputes requiring resolution by the jury. Specifically, Henderson asserted that he did not breach the construction contract as it related to the type of windows to be installed, because the contract did not specify wooden windows. That is, there was a factual dispute requiring jury resolution as to whether the "description of materials" was indeed part of the contract. The Carters asserted that it was their understanding that Exhibit B was the description of materials, and that it called for wooden windows. Henderson, on the other hand, testified that Exhibit B was merely a copy of the house plans, and that the "description of materials" was merely a form that he gave the Carters to help them get financing.
Additionally, Henderson proffered testimony that he did not breach the construction contract as it related to "waterproofing" the basement. Specifically, Henderson testified that the finished part of the basement was waterproofed as that term is commonly understood in the local construction industry. That is, no water or moisture was penetrating the area.[2]
Further, he testified that it was not local industry practice to waterproof an unexcavated (dirt, unfinished) portion of a basement. The Carters, of course, argue that "waterproofing" of a basement means exactly what it says: waterproofing the entire basement. We conclude that, in view of Henderson's testimony as to the local industry standard, a genuine factual dispute existed as to the meaning of "waterproofing" *Page 1354 
that was properly submitted to the jury.
In sum, we conclude that the issues of exactly what type of windows, either aluminum or wooden, the contract called for, and of exactly what the contractual term "waterproof" meant were properly reserved for the jury. The trial court did not err in denying the Carters' motions for directed verdict and JNOV.
 The New Trial Issues
(a) Weight and Preponderance
A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the "sufficiency test" presented by motions for directed verdict and JNOV.Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990); AlpineBay Resorts, Inc. v. Wyatt, 539 So.2d 160 (Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Christiansen, 567 So.2d at 1341. Denying, and to a more limited extent granting, a motion for new trial is within the sound discretion of the trial court. See, Jawad v. Granade, 497 So.2d 471, 477 (Ala. 1986). This Court will not reverse a judgment based on a jury verdict on the ground that the evidence was insufficient unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was "plainly and palpably wrong and unjust." Christiansen, 567 So.2d at 1341. Based on our review of the record, we cannot say that the verdict was plainly and palpably wrong or unjust. There was ample evidence from which the jury could have concluded that Henderson did not breach the construction contract based on either the window problem or the waterproofing problem. Therefore, the plaintiffs' weight-and-preponderance argument must fail; insofar as that ground is concerned, we uphold the trial court's denial of the Carters' motion for new trial.
(b) Juror Answers
The Carters argue in their brief to this Court, as they did in their motion for JNOV or, in the alternative, for a new trial, that a new trial should have been granted because a certain juror failed to answer truthfully concerning an alleged association between himself and Henderson. While we agree with the Carters that a juror's silence during voir dire could be a basis for granting a new trial, we must stress that the initial decision on this issue is within the trial court's sound discretion. Hayes v. Boykin, 271 Ala. 588, 126 So.2d 91 (1960). Further, the trial court's decision on this matter will not be disturbed on appeal unless the appellant establishes that the decision was arbitrarily entered into or was clearly erroneous.Id. The Carters have failed to show that the trial court's decision in this regard was clearly erroneous.
Based on the foregoing, the trial court's judgment entered on the jury's verdict is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and HOUSTON, JJ., concur.
[1] "Substantial evidence" has been defined as "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12.
[2] This Court recognizes that at least one jurisdiction has specifically defined "waterproofing" as it relates to the construction industry. See, Ozark Grocer Co. v. Crandall,131 Ark. 481, 199 S.W. 551, 552 (1917).