PER CURIAM.
The opinion of June 28, 2013, is withdrawn, and the following is substituted therefor.
Hosea O. Weaver and Sons, Inc. (“Weaver”), appeals the judgment entered on a jury verdict in favor of Ira W. Balch, as personal representative of the estate of Danny E. Balch, deceased, and Melvin R. Balch, as personal representative of the estates of Bernard R. Balch, deceased, and Armie Butler Balch, deceased (hereinafter referred to collectively as “the Balch personal representatives”). We reverse the judgment and render a judgment for Weaver.

Facts and Procedural History

In March 2001, the Alabama Department of Transportation (“ALDOT”) awarded Weaver, a road-construction company, the resurfacing contract for approximately *482 eight miles of Highway 84 in Clarke County. The plans and specifications designated by ALDOT for the resurfacing project provided that the completed road surface would have a total width of 24 feet and a cross slope of 2.5 degrees.[1] During the resurfacing project, employees of ALDOT and Weaver inspected and measured the resurfaced highway to ensure compliance with the contract specifications. Weaver completed the resurfacing project in March 2002. In a letter dated March 25, 2002,[2] Terry McDuffie, a construction engineer for ALDOT, notified Weaver that ALDOT was assuming maintenance of the resurfaced highway, stating:
“All work included in [the Highway 84 project] has been completed, and you are hereby notified that [ALDOT] will assume maintenance of the same as of March 19, 2002. This assumption of maintenance is conditioned specifically on materials and workmanship being found satisfactory as determined from our ‘Record Check’ still in progress and meeting [ALDOT] Specifications.
“Should this Department find upon completion of the ‘Record Check’ that any of the materials or workmanship fail to meet the requirements of the plans and specifications, [Weaver] will be required to make such changes as necessary to correct the deficiencies without expense to the Department.”
On June 7, 2002, ALDOT issued a letter of acceptance to Weaver, stating:
“All work included in [the Highway 84 project] has been satisfactorily completed, and you are hereby notified that the work was accepted by [ALDOT] as of March 19, 2002.”
On October 18, 2007, Danny E. Balch, Bernard R. Balch, and Armie Butler Balch were traveling east in a vehicle on the portion of Highway 84 that Weaver had resurfaced when their vehicle, driven by Danny, crossed the centerline and collided with an oncoming tractor-trailer truck, driven by James Daniel Bradley. Danny, Bernard, and Armie died as a result of the accident.
On March 13, 2009, the Balch personal representatives filed a wrongful-death action, pursuant to § 6-5-410, Ala.Code 1975, against Weaver and others alleging, as to Weaver, that Weaver had negligently performed the Highway 84 resurfacing project in 2001-2002 and that its negligent performance caused the accident and, as a result, the deaths of Danny, Bernard, and Armie. Specifically, the Balch personal representatives alleged:
“[Weaver] breached [its] duty of care by, among other things:
“(a) negligently ... paving the subject portion of Highway 84 such that [it] created a deep and dangerous edge drop-off;
“(b) negligently ... paving the subject portion of Highway 84 such that it was less than the required width;
“(c) negligently ... traffic striping the subject portion of Highway 84;
“(d) negligently ... failing to take corrective measures on the subject section of the roadway;
“(e) negligently ... failing to perform the road work in accordance with the requirements of the contract and/or the applicable standard of care.
“The deaths of [Danny, Bernard, and Armie] were caused as a proximate consequence of the wrongful, negligent ... conduct of [Weaver].”
*483 At trial, Lakesha Steele, a senior engineering assistant with ALDOT, testified that she and three other ALDOT employees made daily inspections of the Highway 84 resurfacing project when Weaver was engaged in the project to ensure compliance with the contract specifications. She recalled taking measurements to determine that the asphalt had been laid to the proper width and at the correct cross slope. Both Steele and her supervisor at ALDOT, Johnnie Cook, testified that if, during one of those daily inspections, ALDOT inspectors and/or supervisors found that Weaver was not complying with the contract specifications, the resurfacing process was stopped until the specifications could be met. A field note, dated October 31, 2001, was admitted in evidence; it indicated that ALDOT had halted the resurfacing process to address a cross-slope issue. Steele testified that AL-DOT’s inspection records contained no evidence indicating that Weaver had not complied with the resurfacing specifications in the contract by the time the project was completed.
Terry McDuffie stated that, upon completion of the contract, ALDOT sent Weaver a letter officially accepting Weaver’s work. According to McDuffie, the letter served as notice to Weaver that the State would assume maintenance of the roadway as of March 19, 2002.[3]
With regard to the accident, the evidence indicated that the vehicle in which the Balches were riding was traveling on a portion of the eastbound lane of Highway 84 that had been resurfaced by Weaver when it left the right side of the road and encountered a shoulder drop-off, causing the driver of the Balch vehicle to lose control of the vehicle, which then crossed the centerline into the westbound lane of Highway 84, colliding with a tractor-trailer truck traveling in that lane. According to expert testimony presented by the Balch personal representatives, the accident occurred because Weaver did not comply with the road-resurfacing specifications provided by ALDOT with regard to the cross slope and width of the road when it resurfaced the road in 2001-2002. The testimony, however, further indicated that even if Weaver had been negligent in its performance of the resurfacing contract, if ALDOT had maintained the road routinely and the shoulder drop-off had been filled, the accident probably would not have occurred.
Weaver moved for a judgment as a matter of law at the close of the Balch personal representatives’ evidence and again at the close of its evidence. In its motions for a judgment as a matter of law, Weaver argued, in pertinent part, that it did not owe a duty of care to Danny, Bernard, and Armie because ALDOT had accepted its resurfacing work as satisfactory upon its completion of the contract and had assumed responsibility for maintenance of the road from that time. The trial court denied Weaver’s prejudgment motions for a judgment as a matter of law. The jury returned a verdict for the Balch personal representatives, and Weaver filed a post-judgment motion for a judgment as a matter of law, which the trial court denied. Weaver appeals.

Standard of Review

This Court’s standard of review on a ruling on a motion for a judgment as a matter of law is well settled.
“ ‘When reviewing a ruling on a motion for a JML [judgment as a matter *484 of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmov-ant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.l989).[4] A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).’
“Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003).”
Ex parte Howell Eng’g & Surveying, Inc., 981 So.2d 413, 418 (Ala.2006).

Analysis

Weaver contends that the trial court erred in denying its motions for a judgment as a matter of law because, it says, it did not owe a legal duty of care to Danny, Bernard, and Armie once it had completed the resurfacing project and AL-DOT had accepted its work and assumed responsibility for maintenance of the road.
“In a negligence action the plaintiff must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant’s breach was the actual and proximate cause of the plaintiffs loss or injury. Ford Motor Co. v. Burdeshaw, 661 So.2d 236, 238 (Ala. 1995). ‘ “It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty,” ’ Thompson v. Mindis Metals, Inc., 692 So.2d 805, 807 (Ala.1997) (quoting Morton v. Prescott, 564 So.2d 913, 915 (Ala.1990)), because ‘where there is no duty, there can be no negligence.’ City of Bessemer v. Brantley, 258 Ala. 675, 681, 65 So.2d 160, 165 (1953). ‘ “In Alabama, the existence of a duty is a strictly legal question to be determined by the court.” ’ Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 937 (Ala. 2006) (quoting Taylor v. Smith, 892 So.2d 887, 891-92 (AIa.2004)).”
DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So.2d 454, 460 (AJa.2008). The trial court’s denials of Weaver’s motions for a judgment as a matter of law indicate that the trial court concluded that Weaver did owe a duty of care to Danny, Bernard, and Armie.
“[T]he existence of a duty is strictly a legal question and, under our standard of review, this Court does not afford the trial *485 court’s conclusions of law any presumption of correctness.” Id. Therefore, this Court must first address the strictly legal question presented in this case: whether a road-construction company, which has been granted authority to perform work on a road under a contract with ALDOT and has completed its work on a road to the satisfaction of ALDOT owes a duty of care to the users of the road after ALDOT has assumed responsibility for the maintenance of the road.
ALDOT has responsibility for the superintendence of public roads in the State of Alabama. Section 23-1-40, Ala. Code 1975, explains ALDOT’s responsibility in this regard, stating:
“(a) It shall be the duty of the State Department of Transportation to designate the roads to be constructed, repaired, and maintained and to construct, standardize, repair, and maintain roads and bridges of this state....”
Alabama law is clear: ALDOT controls the public roads of this State, and a road-construction company can perform work on a public road only with ALDOT’s permission. Therefore, a road-construction company’s duty of care arises pursuant to its contract with ALDOT, and the road-construction company can perform work on a road only in accordance with the specifications and instructions provided by ALDOT in that contract. Thus, after a road-construction company has completed the authorized work and ALDOT has accepted the work and assumed responsibility for the superintendence of the road, the road-construction company no longer has authority to perform any work on the road.
In light of a road-construction company’s limited authority to perform work on a public road as permitted by ALDOT and ALDOT’s responsibility to superintend the public roads, we apply the following general rule, known as the “accepted-work doctrine,” which limits the post-acceptance duty of a road-construction company to third parties when, in situations like this one, the work is performed pursuant to a government contract:
“It has long been the general rule that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner, and it has been accepted by him, even though the injury results from the contractor’s negligent performance of the contract or his failure to perform it properly, at least if the defect in the work is not hidden, but is readily observable on reasonable inspection.”
Edward L. Raymond, Jr., Highway Contractor’s Liability to Highway User for Highway Surface Defects, 62 A.L.R.4th 1067,1070 (1988). See also Black v. Kiewit Sons’ Co., 94 Idaho 755, 497 P.2d 1056 (1972)(applying accepted-work doctrine in negligence action against road-construction company and holding that company was not liable to plaintiff); Williams v. Sullivan, Long & Hagerty, Inc., 209 So.2d 618 (Miss.l968)(holding that contractor was not responsible for maintenance of road after county had accepted contractor’s work); and City of Richmond v. Branch, 205 Va. 424, 137 S.E.2d 882 (1964)(holding that although contractor had been negligent in performance of contract, the contractor was not liable to an injured motorist for any failure to properly perform the contract because the work had been completed and accepted by the city before the accident). But see Suneson v. Holloway Constr. Co., 337 Ark. 571, 582, 992 S.W.2d 79, 85 (1999)(discussing the accepted-work doctrine and refusing to continue its application because it was “outmoded and often unnecessarily unfair in application”).
In this ease, because ALDOT had accepted Weaver’s resurfacing work and had assumed responsibility for the mainte *486 nance of the road, we conclude that Weaver owed no duty of care to Danny, Bernard, and Armie.[5] “[B]eeause ‘where there is no duty, there can be no negligence,”’ DiBiasi, 988 So.2d at 460, and because we conclude that Weaver did not have a duty, Weaver is entitled to a judgment as a matter of law.[6]

Conclusion

Based on the foregoing, we reverse the judgment of the trial court in favor of the Balch personal representatives and render a judgment as a matter of law in favor of Weaver.
APPLICATION OVERRULED; OPINION OF JUNE 28, 2013, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND JUDGMENT RENDERED.
STUART and BOLIN, JJ., concur.
MOORE, C.J., and PARKER, MURDOCK, WISE, and BRYAN, JJ., concur in overruling the application for rehearing and concur in the result as to the opinion.
MAIN, J., dissents.

. The cross slope is the tilt in the payement.

. The letter actually carried the incorrect date of March 25, 2002.

. At oral argument before this Court, the Balch personal representatives admitted that after ALDOT had assumed maintenance of the roadway, Weaver could not, without ALDOT's permission, perform any additional work on the roadway.

. "Substantial evidence” is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).

.Our conclusion that Weaver did not have a duty of care in this case does not overrule or disturb this Court’s decision in McFadden v. Ten-TCorp., 529 So.2d 192 (Ala. 1988), which holds that following acceptance of the work by the owner a road contractor may be liable for injuries to third persons that are the result of the contractor’s performance of defective plans and specifications that are " ' "so obviously defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.” ’ " 529 So.2d at 200 (quoting other cases).

. Our decision to reverse the trial court's judgment and to render a judgment on this basis pretermits discussion of the remaining issues raised by Weaver on appeal.