THE LANE-MOORE LUMBER Co., Appellant, v. THE CITY OF STORM LAKE, Appellee.

**Municipal corporations:** EVIDENCE: IDENTIFICATION OF RECORDS. A
1 book containing city ordinances, which is produced by the city clerk, the proper custodian, and identified by him as the original ordinance book of the city, and a part of the records of his office, is sufficiently identified to render it admissible in evidence.

**Same:** ORDINANCES: VALIDITY: REPEAL. The mere fact that a city,
2 acting on the supposition that the subject matter of an ordinance

was covered by a later void ordinance, had overlooked the original ordinance, did not affect its validity or deprive it of its enforceable character; although had the subsequent one been properly enacted it would have worked a repeal by implication of the previous ordinance.

**Same:** ORDINANCES: AMENDMENT: REPEAL: RE-ENACTMENT. While a mere amendment to a void ordinance would be itself invalid, and a void ordinance need not be repealed to render it ineffective; still, a city council may clear its record by formally repealing it and enacting a substitute therefor; and if the substitute is complete in itself and does not depend for its validity upon the void ordinance it is immaterial that the council supposed the void ordinance to be valid and a repeal of some of its provisions necessary to the proper effect of the substitute.

**Same:** ORDINANCES: CONSTRUCTION: ERECTION OF FIREPROOF BUILDINGS. The term "fireproof," as used in an ordinance requiring buildings within a certain district to be composed of iron, stone, brick and mortar or other noncombustable material, is to be reasonably construed; and means a building that can be reasonably depended upon to resist the action of ordinary fire; and the roof of a building need not be constructed throughout of iron, stone, etc., but may be of lumber overlaid with fireproof material.

**Same:** BUILDING REGULATIONS: POWER OF MUNICIPALITY. An ordinance requiring buildings within a certain district to be constructed of specified fireproof material, "or other noncombustible material," is not in excess of municipal power specifying certain material; since, by its terms, the builder is only required to use such material as may be fairly considered noncombustible.

**Same.** An ordinance requiring that buildings erected within fire limits must be of iron, stone, brick, or other noncombustible material, and that if the walls are of iron they must be self supporting, and if of brick or stone must be of a certain thickness, is fairly within the power conferred by the statute, and is not unreasonable or oppressive.

**Same:** BUILDING REQUIREMENTS: SELF SUPPORTING WALLS. The frame of a building constructed of posts or studding upon which is nailed a sheathing of corrugated iron is not a self supporting iron wall, within the meaning of an ordinance requiring the walls of buildings within fire limits, if of iron, to be self supporting.

**Same:** ORDINANCES: REASONABLENESS: DELEGATION OF POWER. An ordinance regulating the construction of buildings within fire limits which requires the builder to obtain a permit from the

mayor is not unreasonable in that regard, nor objectionable as a delegation of the legislative power of the city.

*Appeal from Buena Vista District Court.*—Hon. D. F. Coyle, Judge.

·Saturday, April 8, 1911.

The opinion sufficiently states the case. *Affirmed.*

*Healy, Edson & Moulton,* for appellant.

*James Deland,* for appellee.

Weaver, J.—The plaintiff alleges that it is a lumber dealer, and as such for a considerable period has maintained a yard or place for carrying on its business on the west half of block 14 in the city of Storm Lake, Iowa, and at the commencement of this suit was erecting a shed upon said premises for the shelter and storage of lumber; that the city has interfered with the completion of said structure, and compelled plaintiff's employees to cease their labor thereon, and is threatening to compel the entire removal of said building. This interference, the plaintiff avers, is unlawful, unreasonable, and without cause or authority, and it demands that the city, its officers, and servants be enjoined therefrom. For answer the defendant city admits the plaintiff's ownership of the premises, and the maintenance thereon of a lumber yard. It says, however, that the building which plaintiff is proposing to erect is of wood except a thin covering of corrugated iron; that its site is within the fire limits of the city, and that the erection of such a building within said limits is forbidden by an ordinance enacted August 22, 1885, as well as by ordinance No. 20 of February 6, 1900, and by amendments thereto enacted April 8, 1905, and February 3,

1909.  It is further alleged that whatever said city has done in the premises has been in the exercise of its proper municipal authority and the enforcement of its laws and ordinances.  In reply plaintiff denies the validity of the ordinances relied upon by the defendant.  On application of the plaintiff at the outset of this controversy, a temporary injunction was issued, and, as we infer, the building has been completed to some extent during the pendency of the action.  Trial being had to the court upon the issues thus joined, a decree was entered denying the relief asked and dissolving the temporary injunction.  Plaintiff appeals.

As erected, the shed in question is of wooden frame covered on the sides with sheets of galvanized iron nailed directly to the studding.  The posts stand on cement piers; the roof is covered with flooring over which is laid a paper composition.  The shed is L-shaped, standing on the corner of the block, with total lineal dimension of two hundred and forty feet.  The other half of the block is occupied by business buildings facing in the opposite direction.  A twenty foot alley extends through the block north and south.  The authority of the city to prescribe fire limits and by proper legislation to enact reasonable restrictions and regulations governing the erection and maintenance of buildings therein is not denied by counsel.  Indeed, it is obviously one of the most appropriate subjects for the exercise of the police powers of municipal government.  If, then, that power had been properly exercised by the enactment of ordinances prescribing reasonable regulations to govern the erection of buildings in that part of the city, and the plaintiff was about to build a lumber shed in disregard thereof, the city did not exceed its authority in arresting the progress of the work, and the decree entered below must be affirmed.

I.  First in order of time is the ordinance known as No. 41, passed August 22, 1885.  It prescribes fire limits which include block fourteen, on which the shed in con-

troversy stands, and prohibits the erection therein of any building "unless its outer walls and roof are composed of iron, stone, or brick and mortar, or other noncombustible material." It further provides that before erecting any building within said limits, the owner must make written application to the mayor for a permit describing the proposed structure, and that violation of such regulation shall be deemed a misdemeanor. The regularity of the passage and publication of this ordinance is not seriously questioned. It appears, however, that in the year 1900 there was an attempt to codify or to revise or compile the ordinances of the city, and as' a part of that scheme Ordinance No. 20 of February 6, 1900, was enacted, or attempted to be enacted, covering much of the same subject matter as the former Ordinance No. 41. But it is conceded that fatal defects are shown in the passage of Ordinance No. 20, and it never became legally enforceable, though until this action was brought its validity appears never to have been questioned. It would further seem that from the date of this attempted revision the earlier ordinances, though never formally repealed, were lost sight of or regarded as obsolete until in the trial below No. 41, above mentioned, was rediscovered in an earlier record book which had fallen into disuse.

The book is more or less dilapidated, and some of its original pages are missing, and it is argued for appellant that its identity as a part of the official records of the city has not been established. But the objection is not well taken. It was produced by the proper custodian, the city clerk, who identifies it as the "original ordinance book of Storm Lake" and "part of the records of the city clerk's office," and this is clearly sufficient.

1. Municipal corporations: evidence: identification of records.

The mere fact that the city acting on the supposition that the same subject matter was covered or provided for by the later void ordinance had overlooked the existence

of Ordinance No. 41 would not in our judgment affect
its validity, or deprive it of enforceable
character if any it originally had. It may
be conceded that if Ordinance No. 20 which
attempted to cover the same subject matter had been prop-
erly enacted, it would have worked a repeal of Ordinance
No. 41 by implication, but it would border upon the ab-
surd to say that a proposed ordinance which never ac-
quired life or validity because never legally enacted may
yet operate as an implied repeal of another ordinance duly
passed and entered upon the city records. Of the further
question whether the old ordinance is void as being unrea-
sonable or in excess of the power conferred by the statute
we shall have occasion to speak in another connection.

2. SAME:
ordinances:
validity:
repeal.

II. As we have already noted, the omission of cer-
tain statutory formalities in its passage rendered Ordinance
No. 20 of no validity, and, if the defense in this case
rested alone upon that particular piece of
municipal legislation, the right of plaintiff
to relief might have to be admitted. But
it is pleaded and proved that another ordi-
nance upon this subject and spoken of as the first amend-
ment to Ordinance No. 20, and already referred to in this
opinion, was enacted under date of April 8, 1905. Omit-
ting merely formal parts, this ordinance reads as follows:

3. SAME:
ordinances:
amendment:
repeal: re-
enactment.

Be it ordained by the council of the city of Storm
Lake, Iowa:
That section one (1) of Ordinance Number Twenty
(20) of the city of Storm Lake, Iowa, passed February
6th, 1900, and published in pamphlet form May 7th, 1900,
and recorded on pages 41 and 42 of the ordinance record
of the city of Storm Lake, Iowa, and which reads as fol-
lows:
'Section 1. That no building nor any addition to
any building shall be moved into or erected except with
the outer walls and roof composed of iron, stone, brick
and mortar or other noncombustible material in the part

of said incorporated town described as follows: All of blocks numbered 14, 15, 22 and 23, except the east half of block 15 of said town, in the county of Buena Vista and state of Iowa, and described on the recorded plat of said town. Nor shall any building now erected and standing in the above described limits be removed to or established in any other part of said limits unless its outer walls and roof are composed of iron, stone, brick and mortar or other noncombustible material as above specified. And such walls if of iron shall be self-supporting, and if of stone or brick and mortar not less than eight inches in thickness, and all roofs of any such buildings so erected or removed as aforesaid in said limits shall be composed of slate, iron, stone or some noncombustible material,'— be and the same is hereby repealed, and the following is hereby enacted in its stead and to take the place of said section one in said ordinance:

Section 1. That it shall be unlawful for any person or persons, copartnership, company or corporation to build, erect, place or move within the following described limits, to wit: All of blocks fourteen (14), fifteen (15), twenty-two (22) and twenty-three (23), in the city of Storm Lake, Iowa, according to the recorded plat thereof, any building, part of a building or any addition to any building now or hereafter located thereon except with the outer walls and roof composed of iron, stone, brick and mortar, or other noncombustible material; neither shall any frame building be removed from any other part of the city into said limits, nor from one part of the said limits to any other part of the same, nor shall any building within said limits that has been destroyed by fire in part or otherwise be repaired so as to increase its size in any manner, and no building be erected or moved within said limits having a wood cornice in whole or in part, and it shall be the duty of the council to by resolution order injunction proceedings commenced in the name of the city against any person or persons, firm, copartnership, company or corporation who seeks to erect or establish any such building or addition thereto or who hereafter may erect or establish any such building or addition thereto in violation of this ordinance.

If this ordinance were to be considered as a mere

amendment to the void Ordinance No. 20 and no more, it would at once be open to the obvious objection that if the latter be confessedly invalid, the amendment thereto must also be invalid. But there is no sound reason for saying nor has any authority been suggested for holding that while a void ordinance need not be repealed to render it ineffective, a city council may not clear its records by formally repealing it and enacting a valid substitute therefor. A reading of this ordinance of 1905 shows that this is its real nature and effect. It embodies and recites a verbatim copy of section 1 of Ordinance No. 20, and proceeds to declare that "the same is hereby repealed." This is followed by a statement of the regulations adopted in place of those contained in the repealed enactment. This ordinance is complete in itself. No reference need be made to Ordinance No. 20 to understand its meaning. It describes the fire limits, states the conditions to be observed in the erection of buildings therein, and names a remedy to be pursued in the event of any violation of its provisions. It is broad enough and complete enough to stand alone, and, if it be otherwise sufficient, the fact that the council supposed Ordinance No. 20 to be valid and the repeal of some of its provisions to be necessary to the proper effect of the later ordinance is not a matter of material consequence.

III. The proposition advanced with most apparent confidence by counsel for appellant is that even if the ordinances of 1885 and 1905, either or both, be held to have been enacted in due form, they are nevertheless void for unreasonableness, and as being in excess of the powers vested in the city. Under the Code of 1873, section

4. SAME: ordinances: construction: erection of fireproof buildings.

457, in force at the date of the earlier ordinance, cities and towns were authorized to establish fire limits, and to prohibit the erection therein of any building "unless the outer walls thereof be made of brick and mortar or iron

and stone and mortar." By the Code of 1897, section 711, in force at the date of the later ordinance, this power is somewhat enlarged and authority given to prohibit within the fire limits the erection of any building "unless the outer walls be made of brick, iron, stone, mortar or other noncombustible material with fireproof roofs and to provide for the removal of any structure erected contrary to such prohibition." It will be observed that the section quoted from the Code of 1873 authorized the city to prohibit the erection of any building unless the "outer walls" are made of certain designated materials, and makes no express reference to the roof of such building, and it is urged that, insofar at least as the ordinance of 1885 prescribes that roofs of buildings within the fire limits shall be composed of slate, iron, stone or some metallic substance, it was unauthorized. Were it necessary to decide that question here it would be at least open to argument whether, without undue violence of construction, we might properly hold that the power to regulate the construction of roofs was impliedly granted by this statute, but the point is not vital to the present case, and for the purposes of the argument we may concede that, insofar as the ordinance of 1885 attempted to control the construction of roofs, it was ineffective. But that objection is not fatal to other provisions of the ordinance to which we shall hereinafter more specifically refer. Assuming, then, that the Code of 1873 conferred no authority upon the city to prescribe the kind of roofs to be erected within fire limits, that point can not be made against the ordinance of 1905 enacted under the authority of the Code of 1897.

We are met here, however, by the further objection that granting the authority to the Legislature upon the subject this latter ordinance enlarges upon the statute and goes beyond the power so conferred in that, instead of a simple requirement for fireproof roofs, it assumes to require roofs to be made of specifically named materials,

"iron, stone, brick and mortar or other noncombustible materials." This it is said excludes the idea of a roof made of lumber overlaid with fireproof covering, and compels the builder to construct it throughout of "iron, stone, brick and mortar or other noncombustible material," a thing which is never done, and is wholly impracticable in towns and cities of the size of Storm Lake. We do not so read or interpret the ordinance. The word "roof" may, of course, be given the comprehensive meaning suggested by counsel and made to include, not only the covering which is exposed to the elements from without, but also the rafters or beams which support it and the inner covering or sheeting over which it is spread. But such is not its universal, nor even its most ordinary, signification. If we hear one speak of a "tin roof," a "slate roof," a "tile roof," or "iron roof," it does not convey to our minds a roof composed in all its parts of tin, slate, tile, or iron, but a roof the outside or exposed surface of which is composed of the material mentioned, and this in our judgment is the effect to be given to the ordinance. The term "fireproof" is to be reasonably construed, and means one that can be reasonably depended upon to resist the action of ordinary fires. *Chimene v. Baker,* 32 Tex. Civ. App. 520 (75 S. W. 330).

Nor is there any excess of municipal power in specifying certain materials to be used in constructing roofs, for the same clause includes "other noncombustible material," leaving the builder to his choice so long as the material selected may fairly be considered noncombustible. The plaintiff makes no claim that the roof in controversy is of that character, and if, as we are disposed to hold, the ordinance of 1905 is a valid enactment, the city had the right to object to its construction and to adopt suitable measures to make its objection effectual.

5. SAME: building regulations: power of municipality.

Returning now to the original Ordinance No. 41 and

eliminating as invalid so much thereof as assumes to prescribe regulations as to the roofs of buildings, we have left therein a provision that the outer walls of buildings erected within the fire limits must be of iron, stone, brick, or other noncombustible material. Thus far the ordinance follows the language of the statute and then proceeds to say that such walls, if of iron, must be self-supporting, and, if of brick or stone, must be at least eight inches in thickness. These provisions come fairly within the general terms of the power given by the statute, and do not appear to be unreasonable or oppressive.

6. Same.

We must then determine whether an outer frame of timber or posts or studding upon which is nailed a sheathing of corrugated iron is a "self-supporting iron" wall within the meaning of the ordinance. To so hold would be to perpetrate a mere play upon words. With as much reason could the builder inclose his building with canvas nailed to the framework, and insist that such canvas constitutes a "self-supporting" outer wall. To give the regulation such construction is to rob it of all practical use or value. Under it a person could erect the veriest firetrap in the center of the most closely built business section of the city, and by hanging upon its combustible frame a thin skin of iron, offering little, if any, practical resistance to the spread of flames, successfully oppose any effort to prevent the consummation of his purpose. It is very certain that no such ineffectual regulation was intended by the council, and the courts will not indulge in any strained interpretation of the language of the ordinance to render it abortive. As we have said of the roof of appellant's lumber shed so we must say of its walls—they do not conform to the prescribed regulations—and the conclusion of the trial court that no sufficient showing for an injunction was made must be sustained.

7. Same: building requirements: self supporting walls.

It should perhaps be noted that the provision of the ordinance requiring the builder to obtain a permit from the mayor before entering upon the improvement is assailed as unreasonable, and as also being an attempt to delegate to the mayor the legislative power of the council. It appears to us to be a mere matter of administration against which no valid objection can be raised. When an ordinance of this kind has been passed, some officer must be empowered to attend to its enforcement. It is for the protection of the builder as well as the public that his plans be examined and approved in advance, and the naming of the mayor as the proper officer for that purpose and authorizing him when satisfied that the proposed structure conforms to the ordinance to issue a permit therefor is an appropriate, if not necessary, method of securing proper observance of its provisions.

8. SAME: ordinances: reasonableness: delegation of power.

The ordinance is not one which as counsel say seeks to "tear down and destroy." The appellant's lumber yard at this place antedates all the ordinances in question, and the city is asserting no right to interfere therein. It did have the right to say to the appellant by its ordinance that no further building or structure should be erected at that place except in conformity with the specified regulations, and it was equally within its authority to provide appropriate measures to enforce them. In such matters public rights and public safety are of first consideration, and individual rights must be exercised in subordination thereto.

The decree of the district court was right, and it is *affirmed*.