**DISTRICT OF COLUMBIA, Appellant,**

v.

**Arnold Terrell JONES et al., Appellees.**

**No. 5821.**

District of Columbia Court of Appeals.

Argued Oct. 19, 1971.

Decided Feb. 23, 1972.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on brief, for appellant.

David A. Clarke, Washington, D. C., for appellees.

Before KELLY, KERN and NEBEKER, Associate Judges.

KELLY, Associate Judge:

In July 1970, appellees were charged with boarding a motor bus for hire without paying the established fare or presenting a valid transfer,[1] in violation of Order No. 3345 of the Public Utilities Commission (PUC).[2] That order, promulgated in 1948, provides in pertinent part:

> That no person or persons shall board a street car or motor bus for hire without paying the established fare or presenting a valid transfer for transportation on the said street car or motor bus.

Appellees filed motions to dismiss the informations against them on the grounds that Order No. 3345 was invalid in that it went beyond the authority granted the PUC by Congress; that it was not incorporated by the Washington Metropolitan Area Transit Regulation Compact (Compact),[3] and was, therefore, suspended in 1960 when the Compact came into being, and that the then Court of General Ses-

---

1. The informations charged appellees with "[boarding] a motor bus for hire without paying the established fare or presenting a valid transfer for transportation on the said motor bus in violation of Order No. 3345 of the Public Utilities Commission of the District of Columbia, continued in force and effect by Section 21 of Article XII of the Washington Metropolitan Area Transit regulation compact, for which a penalty is provided in Section 18(d) of Article XII of said compact, said compact being authorized by the provisions of D.C.Code, § 1–1410."

2. The name of the Public Utilities Commission of the District of Columbia was changed to the Public Service Commission of the District of Columbia on August 30, 1964. 78 Stat. 634, Pub.L. 88–503, § 21, D.C.Code 1967, § 2–2418.

3. The Compact is set forth following D.C. Code 1967, § 1–1410.

sions [4] had no jurisdiction over the offense charged. Action on the motions was stayed pending review by this court of the jurisdictional question, then on appeal in a similar case. We thereafter held, in District of Columbia v. Solomon, D.C.App., 275 A.2d 204. (1971), that the Court of General Sessions had concurrent jurisdiction with the United States District Court for the District of Columbia over the offense here in dispute since it was one "for which the punishment is by fine only".[5]

Following the *Solomon* decision, the trial court dismissed the informations against appellees on the ground that the PUC had exceeded its authority in promulgating Order No. 3345. The District of Columbia appeals.

■ It is well established that the rule-making power of administrative officers and agencies "is not the power to make law . . . but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." [6]

In 1913, Congress created the PUC of the District of Columbia,[7] a regulatory agency with powers over "the transportation of passengers, freight, or property from one point to another within the District of Columbia, and any common carrier performing such service . . . ." [8] By statute, the Commission was given the power to regulate rates,[9] and the rights and duties of public utilities were generally outlined. There was no mention of regulatory power over the general public. Significantly, no sanctions against the public were provided. Both the general penalty provision of the original statute [10] and the 1939 amendment to the penalty provision [11] addressed themselves to violations of the Act by public utilities and persons within the utilities. Thus it is clear that the PUC would not have been able to enforce Order No. 3345 under its general penalty powers as they existed prior to the formation of the Washington Metropolitan Area Transit Commission (WMATC).

While the penalty powers of the WMATC are more broadly stated,[12] Congress has not expanded the class to be regulated. In 1960, Congress gave its consent

---

4. Now the Superior Court of the District of Columbia.

5. D.C.Code 1967, § 11–963(a) (1).

6. Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965), *quoting* Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936). *See, e. g.,* Brannan v. Stark, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497 (1952); Celebrezze v. Kilborn, 322 F.2d 166 (5th Cir. 1963); American President Lines v. Mackey, 120 F.Supp. 897 (D.D.C.1953).

7. 37 Stat. 974, D.C.Code 1967, §§ 43–101 to 43–1001.

8. D.C.Code 1967, § 43–122.

9. D.C.Code 1967, §§ 43–401, 43–411.

10. D.C.Code 1967, § 43–906.
   *If any public utility* shall violate any provision of chapters 1–10 of this title, or shall do any act herein prohibited, or shall fail or refuse to perform any duty enjoined upon it for which a penalty has not been provided, or shall fail, neglect, or refuse to obey any lawful requirement or order made by the commission, or any judgment or decree made by any court upon its application for every such violation, failure, or refusal such public utility shall forfeit and pay to the District of Columbia the sum of $200 for each such offense . . . . [Emphasis supplied.]

11. D.C.Code 1967, § 43–907 provides for criminal prosecution of "[a]ny person, corporation, or public utility violating any . . . rule, order, or regulation [of the Commission] . . . *as are subject to the penalties specifically provided in section 43–906.*" [Emphasis supplied.]

12. Compact, Title II, Art. XII, Sec. 18(d) provides:
   "Any person knowingly and willfully violating any provision of this statute, or any rule, regulation, requirement, or order thereto, or any term or condition of any certificate shall, upon conviction

to the entry of Virginia, Maryland and the District of Columbia into a compact for the regulation of mass transportation in the Washington metropolitan area.[13] Thus, the WMATC was created.[14] The purpose of the compact was "centralizing regulation of existing privately owned transit on a regional basis to overcome the barriers imposed by jurisdictional boundary lines".[15] Like the PUC, the WMATC was granted power to regulate the "transportation for hire by any carrier of persons between any points in the Metropolitan District and . . . the persons engaged in rendering or performing such transportation service . . . ."[16] The Compact thus created one regulatory commission to take the place of several then operating within the metropolitan area, but it did not in other ways extend the group to be regulated.

■ As part of the transition process, Section 21 of Title II, Article XII of the Compact was enacted. It provides:

All rules, regulations, orders, decisions, or other action prescribed, issued, made, or taken by the Interstate Commerce Commission, the Public Utilities Commission of the District of Columbia, the Public Service Commission of Maryland, or the State Corporation Commission of Virginia, and which are in force at the time this section takes effect, with respect to transportation or persons subject to this Act, shall remain in effect, and be enforceable under this Act and in the manner specified by this Act, according to their terms, as though they had been prescribed, issued, made, or taken by the

Commission pursuant to this Act, unless and until otherwise provided by such Commission in the exercise of its powers under this Act.[17]

■ Appellant, while conceding that the PUC would not have been able to enforce Order No. 3345, had it tried to prior to the formation of the WMATC, contends that Section 21 of Title II, Article XII, constituted a legislative reenactment of the order. While it has often been held that "[a]n act of the legislature validating acts and proceedings . . . is the equivalent of original authority, and cures all defects or irregularities falling within its scope",[18] such legislation, in order to have a curative effect, "must name or identify in some way the void ordinance or clearly indicate an intent to validate the ordinance." [Footnotes omitted.][19] Section 21 does no such thing. Its purpose is merely to continue in effect orders "with respect to transportation or persons subject to this Act . . . ", and in no way revives orders beyond this scope, or grants new authority.

■ The real issue is, therefore, whether the WMATC itself has sufficient authority to promulgate an order which regulates the conduct of passengers. Appellant argues that this authority can be found by reading the rate-making powers conferred on the Commission in Sections 6 and 7 of Title II, Article XII, in conjunction with the "necessary or appropriate clause" of Section 15 of Title II, Article XII.[20] We cannot agree. While it is

thereof, be fined not more than $100 for the first offense and not more than $500 for any subsequent offense. Each day of such violation shall constitute a separate offense."

13. D.C.Code 1967, § 1–1410.

14. Compact, tit. I, art. II.

15. S.Rep.No.1906, 86th Cong., 2d Sess. 6 (1960).

16. Compact, tit. II, art. XII, § 1.

17. *See* 53–01 of the Rules of Practice and Procedure and Regulations of the Wash-

ington Metropolitan Area Transit Commission for an almost identical section.

18. City of Hutchins v. Prasifka, 442 S.W. 2d 879, 883 (Tex.Civ.App.1969), *quoting* 62 C.J.S. Municipal Corporations § 196 at 358.

19. State ex rel. Brelsford v. Retirement Board, 41 Wis.2d 77, 163 N.W.2d 153, 156 (1968).

20. "The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such

true that the WMATC must set rates which will "provide a return to the shareholders that is reasonable under the circumstances",[21] the dominant purpose for providing such a return is not merely to insure that private investors are protected. Rather, it is to insure that the public will receive adequate service at fair rates. As the court said in Payne v. Washington Metropolitan Area Transit Commission, 134 U.S.App.D.C. 321, 333, 415 F.2d 901, 913 (1968),

> . . . [T]he proper margin of return to be allowed over legitimate operating expenses is "the sum of money needed to attract the capital, both debt and equity, required to insure *financial stability and the resulting capacity of the utility to render the service upon which the public depends."* [Footnote omitted; emphasis supplied.]

Although Section 6(a) (4) of Title II, Article XII of the Compact "is a declaration of legislative policy to the effect that carriers should be afforded the opportunity of earning a return which would make the carriers attractive investments to private investors",[22] it does not follow from this that the WMATC is empowered to promulgate orders requiring the riding public to pay such rates. On the contrary, the power to regulate the conduct of passengers is firmly lodged elsewhere. D.C.Code 1967, § 22–1121 makes it a criminal offense to

cause "a disturbance in any streetcar, railroad car, omnibus, or other public conveyance, by running through it, climbing through windows or upon the seats, or otherwise annoying passengers or employees".[23] Similarly, D.C.Code 1967, § 44–207 makes it unlawful to issue, sell or give away a transfer, except to a passenger lawfully entitled thereto, or to use such an unlawfully obtained transfer. In the same vein are Police Regulations of the District of Columbia [24] which prohibit passengers from spitting or smoking or standing in front of the white line on public conveyances.

As stated in American President Lines v. Mackey, 120 F.Supp. 897, 899 (D.D.C. 1953),

> One must bear in mind that the rulemaking power is not a power to legislate. It is not a power to add to a statute. It would be contrary to the Constitution and contrary to the genius of our institutions to permit executive or administrative officials to legislate. The rulemaking power is merely power to fill in details within the limitations of the statute. . . .

Regulation of the riding public goes beyond merely filling in the details within statutory limitations. Accordingly, the ruling of the trial court is

Affirmed.

---

orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this Act. . . . "

21. D.C. Transit System, Inc. v. Washington Metro. Area Trans. Comm'n, 121 U.S. App.D.C. 375, 402, 350 F.2d 753, 780 (1965), cert. denied, 389 U.S. 847, 88 S. Ct. 52, 19 L.Ed.2d 115 (1967).

22. S.Rep.No.1906, 86th Cong., 2d Sess. 13 (1960).

23. Both Maryland (Ann.Code of Md., art. 27, § 122 (1957), as amended (Cum.Supp., 1968)) and Virginia (Code of Va.1950, § 18.1–253.1, (Cum.Supp., 1971)), have similar statutes.

24. Police Regs., art. 25, § 6(a), (c) and (d) (1968).