Richard J. PILGRIM, et al., Respondents,

v.

CITY OF WINONA, Respondent,

v.

Russell ROYCE, Intervention Defendant,
Intervention Appellant.

No. 46496.

Supreme Court of Minnesota.

June 24, 1977.

McMahon, Darby, Evavold & Price, and Michael J. Price, Winona, for appellant.

Heard before YETKA, SCOTT, KNUT-SON and WINTON, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a district court judgment finding Winona Zoning Ordinance No. 2138 null and void. The action was commenced by the Pilgrims, who are landholders in the Hillview Subdivision of Winona. They originally sought three forms of relief: (1) A declaration that Ordinance No. 2138 was null and void; (2) an injunction restraining the city of Winona from doing anything with respect to the Hillview Subdivision inconsistent with its being zoned R–1; and (3) an order that the city alter all maps and documents to show that Hillview was zoned R–1. The district court decided the case based upon the stipulated facts and briefs of all the parties, finding Ordinance No. 2138 to be null and void but declining to grant any further relief requested by plaintiffs.

The intervenor-appellant, Russell Royce, owner of the property in question, argues on appeal that (1) Ordinance No. 2138 became conclusively valid (under Minn.St. 599.13) 3 years after its enactment; (2) plaintiffs are estopped from challenging Ordinance No. 2138; (3) the procedures used in adopting Ordinance No. 2138 constituted a "bona fide attempt" to comply with Minn.St. 462.357, subd. 3; and (4) Ordinance No. 2138 was validly reenacted by the rezoning procedure in 1974.

The basic facts of this case were stipulated to by all parties below, and this stipulation was adopted by the district court. The following excerpts from the stipulation contain the relevant facts on appeal:

"Russel Royce, intervenor, purchased a parcel of undeveloped land outside the City of Winona in the year of 1968.

"A preliminary subdivision plat for the parcel was submitted to the Planning Commission. On March 19, 1969 a notice of hearing on the preliminary plat was published in the official newspaper of the City of Winona. * * * On March 27, 1969 the Winona Planning Commission gave conditional approval to a preliminary plat for the parcel to be known as Hillview Subdivision. The matter of zoning was not before the Planning Commission at that time.

"On April 7, 1969 petition for annexation of the Hillview Subdivision was presented to the Winona City Council. An ordinance for the annexation of the Hillview Subdivision was introduced by the Council on April 21, 1969. Notice of the proposed ordinance and its purpose was published on April 23, 1969. * * * The annexation ordinance was adopted on May 5, 1969 and was published on May 7, 1969 in the official newspaper for the City of Winona. * * *

"The property was taken into the City as a part of the R–1 District.

"On June 17, 1969 the owner of the property, Royce, requested that the City zone lots one through thirteen of Block One of the Hillview Addition as R–3 (Multiple dwelling residents). The City

Planning Director recommended to the Planning Commission that Lots one through thirteen, Block One be rezoned R–3.

"In June 1969, at a regularly scheduled meeting, the City Planning Commission approved the final plat of the Hillview Subdivision and voted to make a recommendation to the City Council that Lots one through thirteen of Block One be zoned R–3. No notice of the meeting was published nor was notice given that a zoning recommendation would be considered.

"On June 30, 1969 the Winona City Council, at a regularly schedule[d] meeting, passed a resolution accepting the final plat of the Hillview Subdivision. At the meeting the City Council received the Planning Commission's recommendation that the Hillview Subdivision be zoned R–1 except for Lots one through thirteen of Block One which were recommended for R–3 zoning. A Motion to introduce an ordinance to enact this zoning scheme for the Hillview Subdivision was passed at the meeting. No notice was published before the meeting regarding the transmission of the Planning Commission's recommendation nor the anticipated motion to introduce the zoning ordinance.

* * * * * *

"Notice of the proposed ordinance and its purpose was published in the official city newspaper on July 2, 1969. * * * Neither existing zoning map nor the proposed changed zoning map was published along with the notice.

"On July 21, 1969 the ordinance (# 2138) was passed at a regularly scheduled City Council meeting. The minutes of the City Council reflect passage of the ordinance without discussion from either the audience or City Council members.

"On July 23, 1969 ordinance # 2138 was published in the official newspaper of the City of Winona. * * * No zoning map was published with the ordinance.

"At no time before or during the passing of ordinance # 2138 was a notice of public hearing on the zoning consideration published. No hearing, as such, was held.

* * * * * *

" * * * On January 10, 1974 the City Planning Commission held a public hearing, pursuant to notice, on a petition by the owner of Lot two, Block One to have Lots two through thirteen, Block One rezoned from R–3 to R–1. * * * After the hearing was concluded the Commission voted to recommend to the City Council that Lots one through thirteen, of Block One be rezoned R–1. On January 23, 1974 and again on January 30, 1974 a notice of public hearing before the City Council upon the rezoning petition was published in the official newspaper of the City of Winona. * * *

"On February 11, 1974 the City Council held a public hearing pursuant to the notice. The petitioner was represented by plaintiff's counsel in this action and the developer was represented by intervenor's counsel in this action.

"On February 20, 1974 the City Council voted to deny the petition to rezone Lots one through thirteen from R–3 to R–1."

The specific procedural requirements for a zoning ordinance are set out in Minn.St. 462.357. Subdivisions (2) and (3) of that section specify the general requirements and the "public hearing" requirement for zoning legislation:

"Subd. 2. General requirements. At any time after the adoption of a land use plan for the municipality, the planning agency, for the purpose of carrying out the policies and goals of the land use plan, may prepare a proposed zoning ordinance and submit it to the governing body with its recommendations for adoption. Subject to the requirements of subdivisions 3, 4 and 5, the governing body may adopt and amend a zoning ordinance by a two-thirds vote of all its members.

"Subd. 3. Public hearings. No zoning ordinance or amendment thereto shall be adopted until a public hearing has been held thereon by the planning agency or

by the governing body. A notice of the time, place and purpose of the hearing shall be published in the official newspaper of the municipality at least ten days prior to the day of the hearing. When an amendment involves changes in district boundaries affecting an area of five acres or less, a similar notice shall be mailed at least ten days before the day of the hearing to each owner of affected property and property situated wholly or partly within 350 feet of the property to which the amendment relates. For the purpose of giving mailed notice, the person responsible for mailing the notice may use any appropriate records to determine the names and addresses of owners. A copy of the notice and a list of the owners and addresses to which the notice was sent shall be attested to by the responsible person and shall be made a part of the records of the proceedings. The failure to give mailed notice to individual property owners, or defects in the notice shall not invalidate the proceedings, provided a bona fide attempt to comply with this subdivision has been made."

The following issues are presented:

(1) Did Ordinance No. 2138 become conclusively valid (under Minn.St. 599.13) 3 years after its enactment?

(2) Is appellant estopped from challenging Ordinance No. 2138?

(3) Do the procedures used in adopting Ordinance No. 2138 constitute a "bona fide attempt" to comply with Minn.St. 462.357, subd. 3?

(4) Was Ordinance No. 2138 validly reenacted by the rezoning proceedings in 1974?

1. Appellant claims that Ordinance No. 2138 became conclusively valid 3 years after its publication in the official city newspaper on July 23, 1969, due to Minn.St. 599.13, which reads:

"Copies of the ordinances, bylaws, resolutions, and regulations of any city or county, certified by the mayor or president of the council, and the clerk thereof, under its seal or by the county auditor or chairman of the county board, and copies of the same printed in any newspaper, book, pamphlet, or other form, and which purport to be published by authority of the council of such city or county board, shall be prima facie evidence thereof, and, after three years from the compilation and publication of any such book or pamphlet, shall be conclusive proof of the regularity of their adoption and publication."

The important part of the published ordinance itself is Section 1:

"That all of Hillview Subdivision is zoned R–1 except for Lots 1 through 13 of Block 1 [intervenor's land], which are zoned R–3, and the final zoning map of Hillview Subdivision shall be incorporated into the zoning map of the City."

Appellant's argument is twofold: First, the zoning map is a "book" for purposes of Minn.St. 599.13, or second, the zoning map is an "other form" included under Minn.St. 599.13 by the phrase "such book or pamphlet."

 The district court found this argument unconvincing, with good reason. It may well be that the zoning map is an "other form" for purposes of the "prima facie" section of the statute, but this matters little since the ordinance was published in the official newspaper. The "conclusive" portion of the statute is explicit in its omission of "newspapers" and "other forms"—it refers only to "books" and "pamphlets," and the zoning map is neither of these. Ordinance No. 2138 has never been compiled in any book of Winona ordinances or in any separate document other than the original newspaper publication. It thus retains its prima facie validity, but fails to satisfy the statutory requirement for conclusive validity. Contrary to appellant's assertion, the legislative intent of Minn.St. 599.13 is clear: Until an ordinance is published in book or pamphlet form, it can only acquire prima facie validity. The underlying purpose of this rule is to prevent the conclusive effect until the ordinance is available in permanent form for public circulation. The zoning map, while available for public inspec-

tion in the city engineer's office, neither provides the language of individual ordinances (which in some cases may be of uncertain effect) nor is it generally available for circulation to the public. It therefore satisfies neither the express terms nor the legislative purpose of Minn.St. 599.13. Ordinance No. 2138 possesses only prima facie validity, and the regularity of its adoption can be attacked, the burden of proof being on the assailants.

2. As indicated, appellant contends that the plaintiffs are estopped from challenging Ordinance No. 2138 by delay in bringing the action some 5 years after its passage. The district court rejected this argument on two bases: First, the plaintiffs need not have been landowners in Hillview in 1969 when Ordinance No. 2138 was first passed and published and, second, plaintiffs began to challenge appellant's R–3 construction plans as soon as they learned of them.

Appellant cites a number of cases from other jurisdictions in which delays of from 4 to 21 years were held to prevent challenge of ordinances on procedural grounds. However, these cases are distinguishable from the present case on two grounds. First, the nature of the defect in the adoption of Ordinance No. 2138 is the lack of notice and public hearing as required by Minn.St. 462.357. This is the type of defect naturally leading to delay in the bringing of a challenge, since those not seeing the newspaper notice of the ordinance might remain unaware of its passage. Second, it appears that there was little delay between the plaintiffs' learning of the R–3 zoning and their beginning of actions to challenge the classification. Finally, estoppel should be applied sparingly to cases of this nature. The legislature, in establishing the detailed procedure set out in Minn.St. 462.357, intended that the rights of landowners would be protected from arbitrary or detrimental zoning by the public hearing process. Only in those cases where it is clear that a landowner has "sat on his rights" should he be estopped from challenging a zoning ordinance passed without public hearing. The facts of this case do not show that the plaintiffs acted in so dilatory a manner that they should be considered to have surrendered their right of challenge.

3. Appellant argues that the procedure followed in passing Ordinance No. 2138 was a "bona fide attempt" to comply with the notice and public hearing requirement of Minn.St. 462.357, subd. 3. The district court held that compliance was insufficient to satisfy the statute.

The language of § 462.357, subd. 3, should be carefully noted: " * * * defects in the notice shall not invalidate the proceedings, provided a bona fide attempt to comply with this subdivision has been made." This phrasing presumes that notice of a "public hearing" has been given, that the hearing has been held, and that the only problem is some defect in the notice. For example, if the notice were posted 9 days prior to the meeting instead of the specified 10, or if the notice omitted to specify "place" when public hearings were always held in the same hall, the statute would be satisfied. In this case, however, not only was the notice defective—the proceedings themselves were not proper under the statute. The only notice of a "public hearing" before the Winona Planning Commission says nothing about zoning, and the notice of the city council's impending consideration of Ordinance No. 2138 says nothing about a "public hearing." As the district court pointed out, regular city council meetings cannot satisfy the "public hearing" requirement unless they are noticed as such and conducted so that the public has the right to speak on the noticed question. Thus, there was no notice of a public hearing on Ordinance No. 2138, nor was such a public hearing ever held. The district court properly concluded that under these circumstances subd. 3 cannot be found satisfied even under the "bona fide attempt" provision.

4. Appellant finally contends that the rezoning proceedings held in 1974 validly reenacted and ratified Ordinance No. 2138, despite its initial defects. The district court rejected this argument, essentially on the basis that an invalid ordinance

cannot be vitalized. by attempted amendment absent a clear intent to do so. The court, in a detailed memorandum incorporated by reference in its findings, stated:

"In order for an attempted amendment to have curative effect legislation (here the denial of the requested amendment) must name or identify the void ordinance and clearly indicate an intent to validate the ordinance. *State [ex rel. Brelsford] v. Retirement Board* [41 Wis.2d 77], 163 + [N.W.] 2d 153 (Wisc.1968). Before an act of the legislative body can have a validating effect it must be a proceeding equivalent to the original authority and the ordinance must identify in some way the void ordinance and clearly indicate an intent to validate the ordinance. *Village of River Forest v. Midwest Bank and Trust Co.* [12 Ill.App.3d 136], 297 NE2d 775 (Ill.); *District of Columbia v. Jones,* [D.C.App.], 287 A.2d 816. In the absence of such clear indication, however, an invalid ordinance can not be revitalized by an attempt to amend the same. See *Lane-Moore Lumber Co. v. City of Storm Lake,* [151 Iowa 130], 130 + [N.W.] 924 (Ia.)."

With this we must agree, and suggest that the advice therein be followed in future proceedings where applicable. We therefore must affirm the judgment of the district court.

Affirmed.

YETKA, Justice (concurring specially).

I concur in the opinion, but feel compelled to add that the result of the decision is that the plat of Hillview Subdivision has no applicable zoning ordinance affecting it at all. This is fully explained in the trial court's memorandum made a part of its findings:

"In the Court's opinion it does not follow that a finding of invalidity of Ordinance 2138 means that property is automatically zoned R–1 as contended by the plaintiffs. M.S. 462.357, subd. 3 provides that 'no zoning ordinance or amendment' may be adopted without a public hearing. The procedures set forth in Winona City Code, Chapter 31–11, which, in effect, provides that all land not otherwise zoned shall be zoned R–1 is subject to the same attack that plaintiffs have launched against Ordinance 2138. Winona City Code 31–11 zones land automatically without any consideration of the uses to which the land may be put, any evaluation by the Planning Commission, nor is there any provision for notice or public hearing. Thus, it falls foul of the zoning enabling act, and, perhaps also the constitutional guaranty of due process. In construing a substantially similar ordinance the Missouri court so held in *Dahman v. City of Ballwin* [Mo.App.], 483 S.W.2d 605. Therefore, it is the conclusion of the Court that Hillview Subdivision has never been zoned pursuant to the Minnesota zoning enabling statute and the appropriate ordinances of the Winona City Code."