Memory Forbus Beard and her sister, Laura Forbus McGrady, were travelling on U.S. Highway 280 from Sylacauga to Birmingham on November 23, 1987, when they were involved in an automobile accident. They and their parents, Opal and Willard Forbus, sought uninsured motorist benefits under three automobile insurance policies Willard had with Alfa Mutual Insurance Company ("Alfa"). Alfa filed a declaratory *Page 665 
judgment action, seeking a judgment declaring the rights and liabilities under those policies. The four Beard family members filed counterclaims, but eventually the case went to trial on an agreement to treat the four as plaintiffs in a suit for uninsured motorist benefits. A jury awarded Laura $25,000, Memory $100, Willard $5,000, and Opal $5,000. The trial court awarded prejudgment interest to each plaintiff in the following amounts: Laura — $4,886.34; Memory — $6.00; Willard — $977.08; and Opal — $977.08. The two issues on appeal are whether there was sufficient evidence to establish that Laura's and Memory's injuries were caused by an uninsured motorist and whether the trial court erred in awarding each plaintiff prejudgment interest.
On the day of the accident, Memory was driving her father's 1979 Fiat Spider convertible and Laura was riding in the passenger seat. About 30 miles south of the site of the accident, Memory passed a Goins Trucking Company loaded dump truck. She testified that she drove around the truck because "something" kept hitting her windshield while her car was behind the truck. As Memory approached the Inverness subdivision just south of Birmingham, the truck passed her. After stopping at a red light in Inverness, Laura proceeded a short distance and was about to cross the Cahaba River bridge, when her car hit some gravel that had been strewn across the highway. She lost control of her car, which slid off the road and hit two or three small trees. Both Memory and Laura were taken to Brookwood Hospital in Birmingham, where they were treated for several injuries. Laura's testimony was substantially the same as Memory's, with the exception that Laura said she did not recall seeing a logo on the side of the truck.
The other eyewitness to the accident, Jim Jeter, testified that the Forbus vehicle stopped beside his vehicle for the red light at the Inverness intersection. He stated that while he waited at the light, a large dump truck full of gravel, the logo of which he did not notice, entered the highway just in front of him and headed in the same direction. He said that he saw no gravel fall from it and that, just prior to the accident, he saw no vehicles on the highway in front of them besides the dump truck.
Vanda Goins, office manager for Goins Trucking Company, testified that on the day of the accident Goins trucks were hauling asphalt from Childersburg, Alabama, to North Carolina National Bank at "The Meadows," which is near Inverness and about five or six miles south of the Cahaba River bridge. She stated that none of the Goins trucks was designated to go beyond that point. Finally, she stated that all Goins trucks were insured on the date of the accident.
The trial court charged the jury, in part, as follows:
 "As I previously mentioned to you, ladies and gentlemen, [this] case was based on a policy of insurance in which the defendant insurance company issued a policy of automobile liability coverage to the plaintiff, Willard Forbus, which said policy included uninsured motorist coverage. The plaintiffs . . . have alleged in their complaint that they were injured due to the negligence of an unknown driver. I charge you that before the plaintiffs can recover, you must be reasonably satisfied from the evidence that Memory Forbus Beard and Laura Forbus McGrady were injured as a result of the negligence on the part of some unknown driver. If you are so reasonably satisfied, then I charge you that the unknown driver is in law considered an uninsured motorist. I further charge you that the plaintiffs may be entitled to recover even though there was no contact between the driver of the unknown vehicle and the plaintiffs or the plaintiffs' vehicle."
Alfa argues that there was insufficient evidence that an operator of an "uninsured automobile" caused the accident, as that term is defined in Willard's policies. The endorsement in those policies defines an "uninsured automobile" as:
"1. an automobile with respect to which: *Page 666 
 "a. neither the owner nor the operator carries bodily injury liability insurance;
 "b. any applicable policy liability limits for bodily injury are below the minimum required by the Motor Vehicle Safety-Responsibility Act.
 "c. the insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of the accident;
 "d. the sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.
 "2. A Hit-and Run Automobile, meaning a land motor vehicle which causes bodily injury to an insured
arising out of an accident, provided:
 "a. there cannot be ascertained the identity of either the operator or owner of such hit-and-run automobile;
 "b. the insured or someone on his behalf shall have reported the accident within 24 hours to a police or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and
 "c. at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."
There was no direct evidence here concerning how the gravel came to be on the highway. By holding Alfa liable, the jury necessarily found, circumstantially, that an automobile was involved, the operator or owner of which was unascertainable, and that the operator of that automobile was responsible for the gravel being on the highway. Although there was evidence that Goins trucks were carrying asphalt in the vicinity on the date of the accident, the jury could have reasonably concluded, based on the testimony before it, that a Goins truck was not in fact the source of the gravel. We find, therefore, that the jury's verdict is supported by the evidence and that the judgment based on that verdict is due to be affirmed, at least insofar as it determined liability and awarded damages. SeeKhirieh v. State Farm, 594 So.2d 1220 (Ala. 1992).
Alfa also argues that the trial court should not have awarded the plaintiffs prejudgment interest on their recoveries, based on our recent decision in LeFevre v. Westberry, 590 So.2d 154
(Ala. 1991). In that case, James LeFevre was injured as a result of a head-on automobile collision. He sued State Farm Mutual Automobile Insurance Company, seeking benefits under an uninsured motorist policy. In holding that LeFevre was not entitled to prejudgment interest, we stated:
 "In general, there is a statutory right to interest on the amount payable under any type of insurance policy. Ala. Code 1975, § 8-8-8; Thomas v. Liberty Nat'l Life Ins. Co., 368 So.2d 254 (Ala. 1979). However, for the insured to be entitled to interest, the amount due under the policy must be a liquidated sum."
590 So.2d at 163.
This Court applied the holding in LeFevre recently in UnitedStates Fidelity Guaranty Co. v. German Auto, Inc.,591 So.2d 841 (Ala. 1991), and concluded that the trial court had erroneously awarded German Auto prejudgment interest because its claim for a business loss under its policy with United States Fidelity Guaranty Company had been unliquidated until the judgment was entered. In reaching that result, the majority distinguished between "liquidated" and "unliquidated" damages:
 "The term 'liquidated' damages is defined as 'the amount of damages . . . ascertained by the judgment in the action, or . . . a specific sum of money . . . expressly stipulated by the parties . . . as the amount of damages to be recovered. . . . [Those] damages which are reasonably ascertainable at time of breach, *Page 667 
measured by fixed or established external standard, or by standard apparent from documents upon which plaintiffs based their claim.' Black's Law Dictionary 391 (6th ed. 1990). The term 'unliquidated damages' is defined as damages that 'are not yet reduced to a certainty in respect of amount, nothing more being established than the plaintiff's right to recover; or [damages] as cannot be fixed by a mere mathematical calculation from ascertained data in the case.' Black's Law Dictionary 393 (6th ed. 1990)."
591 So.2d at 843.
Applying those definitions to this case, we hold that the amounts eventually found to be due under Willard's policies were unliquidated, i.e., the damages were "not yet reduced to a certainty in respect of amount" until the trial court entered its judgment. That portion of the trial court's judgment awarding prejudgment interest is, therefore, due to be reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.