[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 38 
Continental Casualty Company appeals from a judgment entered on a jury verdict in favor of Plantation Pipe Line Company. We affirm.
 I.
Plantation Pipe Line Company owns and operates an underground pipeline system that carries petroleum products from Louisiana to North Carolina. Plantation incurred environmental cleanup and settlement expenses for contamination caused by a leak of petroleum products in Hale County, Alabama (the Elliott's Creek site), discovered in 1999. Plantation demanded payment from its insurance carriers, Royal Indemnity Company and Continental Casualty Company, for the expenses, but they did not pay. On July 26, 2001, Plantation sued Continental and Royal, alleging breach of contract and bad-faith failure to pay a claim and seeking a declaratory judgment for future expenses. Continental moved for a judgment on the pleadings dismissing Plantation's bad-faith claim; the trial court granted that motion. Continental also moved for a summary judgment on the ground that the leak did not fall within the policy definition of an "occurrence" because Plantation "expected or intended" petroleum contamination from *Page 39 
its pipeline system. The trial court denied Continental's summary-judgment motion.
Royal and Continental provided insurance coverage to Plantation for any event that happened between November 30, 1969, and November 30, 1972, and that fell within the policy definition of an "occurrence." The Royal and Continental insurance policies define an "occurrence" as "an accident, . . . which results, during the policy period, in bodily injury or property damage neither expected or intended from the standpoint of the insured." At trial, Plantation presented a report dated January 13, 1972, which stated that a leak of approximately four to five barrels had occurred at the Elliott's Creek site in January 1972. Therefore, Plantation argued, the contamination discovered in 1999 at the Elliott's Creek site was the result of a leak that occurred in January 1972 and therefore was covered by the Continental policy.
Plantation filed a motion in limine seeking to exclude certain evidence that Continental sought to introduce, namely, the "Plantation Pipe Line Company Economic Study No. 4-71" dated 1971 (the "1971 study"); the supplement to the 1971 study; and the testimony of C. David Millican, an expert witness. After hearing oral argument on the motion, the trial court excluded the evidence.
During a pretrial conference, Plantation advised the trial court that it intended to seek umbrella liability coverage from Continental pursuant to "Coverage B" of Continental's insurance policy. Based on Plantation's advisement, Continental, before trial, moved for a judgment on the pleadings, contending that in its complaint Plantation had asserted a claim only under "Coverage A" of Continental's insurance policy. "Coverage A" provided Plantation with $5,000,000 in coverage, but only after Plantation had exhausted Royal's $1,000,000 coverage. "Coverage B" of Continental's insurance policy was umbrella coverage and provided Plantation with $5,000,000 in coverage regardless of whether Royal's policy limit was exhausted. After oral argument on the motion, the trial court denied Continental's motion.
At the close of Plantation's case and again at the close of all the evidence, Continental moved for a judgment as a matter of law pursuant to Rule 50, Ala. R. Civ. P. Continental argued that Plantation had failed to present evidence linking the contamination discovered in 1999 to the leak that occurred in 1972. The trial court denied Continental's motions, and the case was presented to the jury.
The jury rendered a verdict in favor of Plantation and against Royal and Continental, finding that the contamination discovered in 1999 was the result of the 1972 petroleum-products leak. The jury also found that both Royal's insurance policy and Continental's "Coverage A" insurance policy covered Plantation's cleanup and settlement costs. The jury did not find that Continental's "Coverage B" insurance policy covered Plantation's cleanup and settlement costs. The jury awarded Plantation a total of $2,912,043.38. The trial court entered a final order and judgment directing Royal to pay Plantation $1,000,000 and Continental to pay Plantation $1,887,043.38.[1] The trial court further *Page 40 
ordered Continental to pay any future reasonable costs incurred by Plantation at the Elliott's Creek site until those costs reached $3,112,956.62, which, combined with the amount of the jury verdict, represented the limit of Coverage A under the Continental policy.
Plantation moved to have the trial court amend the final judgment to include prejudgment interest. Continental renewed its motion for a judgment as a matter of law or, in the alternative, moved for a new trial. The trial court granted Plantation's motion and denied Continental's motion. Continental appealed;[2] we affirm.
 II.
Continental argues (1) that the trial court erred in denying Continental's motion for a judgment as a matter of law; (2) that the trial court erred in excluding certain evidence; (3) that the trial court erred in denying Continental's motion for a judgment on the pleadings based on Plantation's alleged failure to assert a claim under "Coverage B" of Continental's insurance policy; and (4) that the trial court erred in awarding Plantation prejudgment interest. In addition, Continental asserts that Plantation argues for the first time on appeal that the 1972 leak involved not a small, but a large, release, and that Plantation is estopped from advancing such an argument on appeal.
 III. A. Continental's Motion for a Judgment as a Matter of Law "When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992)."
Waddell Reed, Inc. v. United Investors Life Ins. Co.,875 So.2d 1143, 1152 (Ala. 2003).
Continental argues that Plantation failed to present substantial evidence indicating that the contamination at the Elliott's Creek site fell within the scope of Continental's insurance coverage. Continental contends that this case is similar to State Farm Fire Casualty Co. v. Shady Grove BaptistChurch, 838 So.2d 1039 *Page 41 
(Ala. 2002), in which this Court held that the policyholder had failed to prove by substantial evidence that the collapse of a roof fell within the coverage of State Farm's insurance policy. This Court held that offering speculative testimony of several possible theories on the reason for the collapse of the roof was not "substantial evidence." 838 So.2d at 1046. Thus, we reversed the trial court's judgment because the trial court had erred in denying State Farm's motion for a judgment as a matter of law.
Continental's primary argument is that Plantation failed to prove that the contamination discovered in 1999 resulted from the 1972 leak because no one testified that the 1972 leak caused the contamination. Continental also argues that the report of the 1972 leak, dated January 13, 1972, stated that a small amount of petroleum product had escaped. Continental contends that the contamination "plume" discovered in 1999[3] was far from the site of the 1972 leak (extending 1,200 to 1,250 feet from the pipeline to the Elliott's Creek site) and far wider and deeper (650 feet wide and 40 feet below the ground surface) than could have been possible from a small release. Continental also points out that Plantation's expert testified that the contamination was consistent with a leak that occurred between 1962 and 1979; the expert did not testify that the 1972 leak caused the contamination. Finally, Continental argues that Plantation failed to prove that no other leaks occurred at the Elliott's Creek site and that Plantation's employees admitted that undetected and unreported leaks had occurred.
Plantation, however, did present substantial evidence indicating that the contamination discovered in 1999 at the Elliott's Creek site was the result of the 1972 leak. Plantation's expert testified on direct examination and on cross-examination that he believed that the 1972 leak caused the contamination. He admitted that given the chemical composition of the contaminant, it is possible that the leak could have occurred between 1962 and 1979. He testified further, however, that based on the 1972 leak report and on the chemical composition of the contaminant, he believed the 1972 leak was the source of the contamination.
The memorandum reporting the 1972 leak states that "it is estimated that only 4 or 5 barrels escaped from the line until it was repaired." Continental argues that Plantation failed to show how such a relatively small leak could cause such a large area of contamination. Plantation's expert testified that the amount reported in a leak report is usually lower than the actual leakage amount and that he believed the 1972 leak was actually larger than stated in the report. The leak report itself indicates that the amount was an estimate. One of the witnesses for Plantation also testified that a small amount of petroleum products can disperse to a wider area just as a single drop of dye can disperse in a tub full of water.
On a large map of the area,[4] witnesses showed the jury the 1972 leak site in relation to the contamination site, and Plantation employees testified that no other leaks were reported in that area. Plantation's witnesses testified that leaked petroleum *Page 42 
product usually soaks into the ground, moves downward and sideways, travels with underground water once it reaches the water, and moves 10 to 30 feet per year away from the original leak site. A Plantation witness testified that the contamination area discovered in 1999 was approximately 600 to 800 feet from the pipeline, which, we note, is within the range suggested by Plantation's witness.
Continental's statement that Plantation's employees testified that undetected and unreported leaks occurred is not supported by any of Continental's citations to the record. Plantation's employees testified only that undetected leaks could have occurred. No one testified that Plantation's employees failed to report any discovered leaks or that there was reason to believe that in fact any undetected, unreported leaks had occurred.
Unlike the plaintiff in Shady Grove Baptist Church, Plantation offered one theory — i.e., that the contamination discovered in 1999 was the result of a leak in the pipeline that occurred in 1972 — and its evidence supports that theory. Viewing the evidence in the light most favorable to Plantation, the nonmovant, we conclude that it has offered substantial evidence supporting its case. The trial court therefore did not err in denying Continental's motion for a judgment as a matter of law.
 B. Plantation's Motion in Limine
"The decision to admit or to exclude evidence is within the discretion of the trial judge, and we will not reverse such a decision absent an abuse of discretion." City of Birmingham v.Moore, 631 So.2d 972, 974 (Ala. 1994). "Evidence is relevant when it tends to shed some light on an issue in the case. . . . Decisions on the relevancy of testimony are within the trial court's sound discretion, and will not be reversed unless they are plainly erroneous." Eason v. Comfort, 561 So.2d 1068,1071-72 (Ala. 1990).
1. Evidence Regarding Continental's Defense that Plantation "Expected or Intended" the 1972 Leak
The Continental insurance policy defined an "occurrence" as "an accident, . . . which results, during the policy period, in bodily injury or property damage neither expected or intended from the standpoint of the insured." Continental argues that the trial court erred in granting Plantation's motion in limine and in excluding certain evidence related to Continental's defense that Plantation "expected or intended" the 1972 leak. Thus, Continental argues, if it could have presented evidence showing that the 1972 leak was "expected or intended," that leak would not have been an insured event.
Continental argues that it should have been allowed to present the 1971 study, the supplement to the 1971 study, and the testimony of its expert witness, C. David Millican. Continental argues that Plantation completed the 1971 study before the 1972 leak and that the purpose of the 1971 study was to assess the condition of the main pipeline. The 1971 study, according to Continental, provided year-by-year projections of the leaks Plantation expected from 1971 through 1980. Continental further asserts that the 1971 study showed problems of corrosion in the main pipeline.
Although the trial court excluded the 1971 study and its supplement, Continental cross-examined the president of Plantation regarding the 1971 study. The testimony of Plantation's president reflects that the 1971 study was a preliminary report and that Plantation's board of directors never reviewed it. Instead, according to Plantation's president, its board of directors reviewed *Page 43 
subsequent studies. Furthermore, the projection of leaks in the 1971 study did not identify when or where any projected leaks might occur and what damage might be caused by these leaks. If Millican had been allowed to testify, his expert testimony would have been related to the 1971 study and the corrosion of the main pipeline.
The trial court did not abuse its discretion in excluding the 1971 study, the supplement to the 1971 study, and Millican's testimony. Evidence that Plantation had general knowledge of the risk of a leak does not establish that Plantation subjectively expected or intended pipeline leaks.[5] Southern Guar.Ins. Co. of Georgia v. Saxon, 190 Ga.App. 652, 653,379 S.E.2d 577, 578 (1989).[6] Plantation's pipeline runs from Louisiana through North Carolina. The 1971 study and its supplement fail to show that Plantation specifically intended or expected the 1972 leak at the Elliott's Creek site. Instead, the 1971 study and its supplement show only that Plantation was generally aware of the risk of a leak occurring anywhere along its entire pipeline.
The trial court did not exceed its discretion by weighing the relevance of the 1971 study and its supplement against any unfair prejudice to Plantation and deciding to exclude them. Rule 403, Ala. R. Evid. Nor did the trial court exceed its discretion in excluding Millican's expert testimony; the trial court determined that his testimony would have been based largely on the 1971 study and other excluded evidence.
2. Testimony of Ward Pearson and Greg Pearson
Continental argues that the owners of the property on which the contaminated site is located, Ward Pearson and Greg Pearson, were improperly excluded from testifying at trial. Continental argues that the Pearsons should have been allowed to testify regarding their discovery of the contamination and how that contamination manifested itself. Plantation provided ample evidence regarding the contamination and the manifestation of the contamination on the Pearsons' property. Continental does not explain why additional testimony from the Pearsons would have been necessary or helpful. Thus, the trial court did not exceed its discretion in excluding the Pearsons' testimony.
 C. Continental's Motion for a Judgment on the Pleadings "A judgment on the pleadings is subject to a de novo review. Harden v. Ritter, 710 So.2d 1254, 1255
(Ala.Civ.App. 1997). A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in the light most favorable to the nonmoving party. Id. at 1255-56. If matters outside the pleadings are presented to and considered by the trial *Page 44 
court, then the motion for a judgment on the pleadings must be treated as a motion for a summary judgment. See Rule 12(c), Ala. R. Civ. P. Otherwise, in deciding a motion for a judgment on the pleadings, the trial court is bound by the pleadings. See Stockman v. Echlin, Inc., 604 So.2d 393, 394
(Ala. 1992)."
Universal Underwriters Ins. Co. v. Thompson, 776 So.2d 81,82-83 (Ala. 2000). See also Moore v. Liberty Nat'l Life Ins.Co., 267 F.3d 1209, 1213 (11th Cir. 2001) (stating that the federal district court's denial of a judgment on the pleadings is reviewed de novo); 5C Charles A. Wright Arthur R. Miller,Federal Practice Procedure: Civil § 1368 (3d ed. 2004) (stating that review of a federal district court's ruling on a judgment on the pleadings is de novo). See generally Ex parteHorn, 718 So.2d 694, 705 (Ala. 1998) (holding that the de novo standard of review applies where the trial court bases its judgment on the pleadings, exhibits, and briefs); Provident Life Cas. Co. v. Crean, 804 So.2d 236, 238 (Ala.Civ.App. 2001) (holding that the de novo standard of review applies where the trial court's judgment was based on stipulated facts).
Continental argues that the trial court erred when it denied Continental's motion for a judgment on the pleadings because, Continental argues, Plantation could not assert a claim under Coverage B of Continental's insurance policy. Continental argues that in its complaint Plantation asserted a claim only under Coverage A of the policy. Continental further argues that Plantation's notice of the occurrence and its correspondence to Continental regarding the claim showed that Plantation sought recovery under only Coverage A. Continental argues that Plantation, therefore, waived its right to assert any claim under Coverage B. See Ford v. Jackson Square, Ltd., 548 So.2d 1007,1013 (Ala. 1989).
Plantation did not expressly state in its complaint whether it was seeking recovery under Coverage A or Coverage B; however, Plantation described the insurance coverage provided by Continental and the damages based on the breach-of-contract claim as exceeding Royal's insurance limit, which indicates that Plantation was claiming under Coverage A.[7]
Plantation argues that it requested recovery of all settlement payments and cleanup expenses and that it did not limit itself to recovery under only Coverage A or Coverage B. Plantation argues that the Alabama Rules of Civil Procedure require only notice pleading and that its complaint was sufficient to put Continental on notice that Plantation was seeking recovery under *Page 45 
both Coverage A and Coverage B. Weaver v. American Nat'l Bank,452 So.2d 469, 473 (Ala. 1984). Plantation also points out that Continental asserted five affirmative defenses related to the defined terms in the policy that apply only to Coverage B, thereby indicating, Plantation argues, that Continental was on notice that Plantation was seeking recovery under Coverage A and Coverage B.
In Weaver, supra, the complaint listed facts without citing any legal theories, and the court dismissed the complaint on the basis that the plaintiff had not stated a claim upon which relief could be granted. 452 So.2d at 472. This Court reversed the dismissal and held that when considering a motion to dismiss made pursuant to Rule 12(b)(6), Ala. R. Civ. P., the trial court should construe the pleadings to do substantial justice and that strict rules of pleading may be disregarded under the notice-pleading rule. 452 So.2d at 473. This Court further held that "[a] complaint is sufficient if it puts the defendant on notice of the actions against which it must defend."452 So.2d at 473.
Unlike the plaintiff in Weaver, Plantation stated legal claims in its pleading. In its complaint, Plantation asserted a claim that would fall under Coverage A, but it did not assert a claim that would fall under Coverage B. Even though Plantation's complaint does not specifically seek recovery under Coverage A, the totality of the language in the complaint suggests that Plantation was seeking recovery under Coverage A. Moreover, Continental asserted 36 affirmative defenses, some of which relate only to Coverage B — though it does argue that it was pleading stock affirmative defenses out of caution, not because it was necessarily on notice that Plantation was asserting a claim under Coverage B.
Nonetheless, we do not need to decide whether, reviewing the language of the complaint in its entirety, the trial court erred in denying Continental's motion for a judgment on the pleadings. Even if the trial court did err, the error was harmless because the jury found Continental liable under only Coverage A. This Court will not reverse or set aside a judgment based on an alleged error that did not injuriously affect a party's substantial rights. Rule 45, Ala. R.App. P. ("No judgment may be reversed or set aside . . . for error as to any matter of pleading or procedure, unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties.").
 D. Award of Prejudgment Interest
Where material facts are not in dispute and the "appeal focuses on the application of the law to the facts, no presumption of correct[ness] is accorded to the trial court's judgment. Therefore, we review de novo the application of the law to the facts. . . ." Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379
(Ala. 1996).
Continental argues that the trial court should not have awarded Plantation prejudgment interest. Continental argues that under Alabama law prejudgment interest is appropriate if (1) the parties stipulate to the amount of damages or (2) the damages are "liquidated damages," i.e., damages that are "`reasonably ascertainable at time of breach, measured by fixed or established external standard, or by standard apparent from documents upon which plaintiffs based their claim.'" Alfa Mut. Ins. Co. v.Beard, 597 So.2d 664, 666-67 (Ala. 1992) (quoting United StatesFid. Guar. Co. v. German Auto, Inc., 591 So.2d 841 (Ala. 1991)). Continental also argues that, similarly, "open accounts" are not subject to prejudgment interest. See Zadek v. Burnett,176 Ala. 80, 57 So. 447 *Page 46 
(1912); West Alabama Health Servs., Inc. v. J.T. May Drugs,Inc., 608 So.2d 749 (Ala.Civ.App. 1992). Continental argues that because Plantation continued to remediate at the Elliott's Creek Site, the remediation costs continued to increase up until the trial.
Continental's arguments lack merit. "In general, there is a statutory right to interest on the amount payable under any type of insurance policy." LeFevre v. Westberry, 590 So.2d 154, 163
(Ala. 1991) (citing § 8-8-8, Ala. Code 1975, and Thomas v.Liberty Nat'l Life Ins. Co., 368 So.2d 254 (Ala. 1979)). The award of prejudgment interest was based on two demands for payment Plantation made to Continental before trial. Plantation's demands were based on amounts already spent as a result of settling with the landowners at the Elliott's Creek site and cleaning up the Elliott's Creek site. Therefore, the damages were ascertained and reduced to certainty before trial. Plantation did not receive any award of prejudgment interest on the damages that continued to accrue up to the trial because those damages were not reasonably ascertainable. The trial court did not err in awarding prejudgment interest to Plantation.
 E. Plantation's Argument Regarding the Size of the 1972 Leak
Continental argues in its reply brief that Plantation, in its brief in opposition to Continental's appeal, takes a position that an amount of petroleum product larger than was recorded was released as a result of the 1972 leak. Continental argues that Plantation first presented that position in its appellate brief and that therefore Plantation should be estopped from arguing that the 1972 leak was other than a small release. The record, however, reflects that Plantation had previously stated that the amount of petroleum product in the report on the 1972 leak was an estimate. Thus, Plantation's position is not new. Moreover, Continental is barred from raising an issue for the first time in its reply brief. Byrd v. Lamar, 846 So.2d 334, 341 (Ala. 2002).
 IV.
It was not reversible error for the trial court to deny Continental's motion for a judgment on the pleadings as to whether Plantation had asserted a claim under Coverage B of the insurance policy, to deny Continental's motion for a judgment as a matter of law, to exclude certain evidence, and to award prejudgment interest to Plantation. Therefore, we affirm the trial court's judgment.
AFFIRMED.
NABERS, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.
[1] The difference between the $2,912,043.38 jury verdict and the $2,887,043.38 judgment apparently reflects the policy deductible of $25,000. A "Note" in the jury-verdict form indicates that the trial court would apply the damages determined by the jury in accordance with the deductibles and limits of the policies. Continental and Plantation did not explain the discrepancy in their briefs. It may be that $5,000.00 was a deductible. In any case, this discrepancy has no bearing on the issues raised in this appeal.
[2] After the judgment was entered, Royal and Plantation settled Plantation's claims against Royal. Royal is not a party to this appeal.
[3] The property owners, Greg Pearson and Ward Pearson, discovered the contamination area in 1999. At that time, the area was approximately 600 to 800 feet from the pipeline.
[4] The large map was not included with the exhibits sent to this Court. The cover letter from Plantation's counsel to the trial court's clerk's office indicated his understanding that the clerk's office does not accept soil samples and oversized exhibits.
[5] There is a difference between "intentional acts" and "intentional consequences or results." An event may be excluded from coverage because it was specifically intended or expected, even if the resulting injury is different in kind or magnitude from the intended or expected injury. Stein v. Massachusetts BayIns. Co., 172 Ga.App. 811, 813, 324 S.E.2d 510, 511-12 (1985). However, an event may not be excluded from coverage in the absence of such intent or expectation. See Southern Guar. Ins.Co. of Georgia v. Saxon, 190 Ga.App. 652, 653, 379 S.E.2d 577,578 (1989).
[6] According to the complaint, Plantation's primary place of business is in Georgia. The parties do not dispute that Georgia substantive law applies. (See Continental's brief at 63 n. 9.) Accordingly, the parties cite Georgia cases.
[7]
 "23. For the period of November 30, 1969, to the date of November 30, 1972, Continental . . . insured Plantation under umbrella excess third party liability Policy No. RDU 805 33 02, which was excess the limits provided by the Royal policy.
 "24. Continental Casualty Policy No. RDU 805 33 02 provided $5 million per occurrence limits and $5 million per aggregate limits for property damage in excess of $1 million caused by an `occurrence.' . . .
". . . .
 "29. . . . Out of the expenditures totaling $1,452,244.00, Plantation, taking into account its $25,000 deductible, demanded payment of $1.0 million from Royal and $425,000 from Continental Casualty. . . .
". . . .
 "37. Plantation is entitled to recover against Continental Casualty in excess of $400,000 for past clean up expenses, and settlements. . . . Plantation is further entitled to recover against Continental Casualty for all future clean up expenses related to the 1972 release occurrence (excess the underlying $1.0 million limits of Royal's policy) until exhaustion of its $5.0 million limits."
(Emphasis added.)